MARYLAND CASUALTY CO. *v.* HALL.

[88 South. 407, No. 21833.]

1. PRINCIPAL AND SURETY. *Employer bound to report only facts justifying charge of larceny or embezzlement under indemnity bond.*

Where a surety company has executed a bond indemnifying an employer against loss by reason of any act of an employee constituting larceny or embezzlement, under a provision of the bond requiring the employer to give written notice to the company immediately upon becoming aware of any loss which might be made the basis of a claim thereunder, the employer is not bound to report his suspicions arising from unexplained irregularities or discrepancies in the books or accounts of the employee, but notice is only required after the employer has knowledge of such facts as would justify the charge of larceny or embezzlement.

2. PRINCIPAL AND SURETY. · *Surety under indemnity bond not liable for sums owing to employer by employee discharged by improper use of employer's other funds.*

Under an employer's indemnity bond, providing that the company shall not be liable thereunder for any sum owing to the employer by the employee at the commencement of the term of the bond, or for any money thereafter used directly or indirectly by the employee to discharge in whole or in part any debt or obligation contracted or incurred by the employee with the employer before or during the term of the bond, the surety company is not liable for any sum which was owing to the employer at the commencement of the bond, and which the employee attempted to discharge by the improper use of other funds of the employer.

APPEAL from chancery court of Jones county.

HON. G. C. TANN, Chancellor.

Suit by K. C. Hall against the Maryland Casualty Company and another. Decree for complainant, and defendant named appeals. Affirmed conditionally.

*Shannon & Shauber,* for appellant.

Appellant first contends that appellee did not comply with the third clause contained in said bond, which required appellee as soon as he became aware or received any notice of any loss, which may be made a basis of a claim thereunder, to immediately notify appellant by registered letter addressed to appellant at its principal offices in Baltimore, Maryland.

We find, from our investigation of the authorities that the courts do not agree on the construction of the clause in fidelity bonds requiring immediate notice on behalf of the employer to the surety company on his having knowledge of any act of dishonesty on the part of the employee; we do find, however that there is a distinction made between bonds where the clause requires the employer when he had knowledge of the act of dishonesty and those bonds that require the employer to immediately notify the surety company when the employer becomes aware, or is notified, of any acts of dishonesty on the part of the employer.

We call the court's attention to the fact that clause three in the bond now before the court provides, that the employer on becoming aware of or upon receiving notice of, any loss which may be made the basis of any claim hereunder, shall immediately notify the company by registered letter.

In the case of *Guarantee Company of North America* v. *Mechanics' Saving Bank & Trust Company,* reported in Volume 46 of the United States Supreme Court reports (Lawyer's Edition), on page 253, the court through Chief Justice FULLER, in part says: "In Pauly's case, where the bond required that the company should be notified in

writing of any act on the part of the employee which may involve a loss for which the company is responsible hereunder, as soon as practical after occurrence of such act may have come to the knowledge of the employer," it was ruled that it had been properly held that the surety company did not intend to require written notice of any act upon the part of the cashier that might involve loss, unless the bank had knowledge, not simply suspicions, of the existence of such facts as would justify a careful and prudent man in charging another with fraud or dishonesty.

"But the bond before us not only contained that clause under consideration, which was a different and additional clause intended to secure the safety of prevention through timely warning."

It seems to us that the obvious meaning of becoming aware, as used in this bond is to be informed of, or to be apprised of, or to be put on one's guard in respect to, and that no other meaning is equally admissible under, the terms of the instrument. These are the definitions of the lexicographers, distinctly deducible from the derivation of the word, aware, and that is the sense in which they are here employed. It is used in the same sense in the cashier's certificate on the renewals of the teller's bond.

To be aware is not the same as to have knowledge. The bond itself distinguishes between the two phrases, and uses them as not synonymous with each other, and in view of the plain object of the clause, we cannot regard the words as equivalent to becoming satisfied, though perhaps they may be to having reasons to believe.

The company's defense did not rest on the duty of diligence growing out of the relation of the parties, but on the breach of one of the stipulations entered into between them. The question was not merely whether the conduct of the bank was contrary to the nature of the contract, but whether it was not contrary to its terms. The Pauly case, is reported in the 42d volume of the United States Supreme Court Reports (Lawyer's Edition), on page 977.

The tenth clause in the bond is as follows: "Tenth: That the company shall not be liable under this bond for any sum or amount owing to the employer by the employee at the commencement of the term of this bond, or for funds, moneys, or personal property thereafter used directly or indirectly by the employee to reimburse the employer for any such sum, amount or deficiency, or to discharge in whole or in part any debt or obligation contracted or incurred by the employee with the employer before or during the term of this bond."

If this court should hold that appellee gave appellant the necessary notice under clause three of said bond, then we submit that appellant is entitled to a credit for the sum of sixty-four dollars the amount that McDonald, the employee, became owing appellant during the term of this bond.

It has been uniformly held by this court that it is the duty of this court to construe contracts and not make contracts for litigants. As aptly stated by Mr. Justice Ethridge in the case of *Fleming* v. *Miller*, reported in 87 So. 277: "Of course, it is competent for parties to make such contracts as they please, not contrary to law or public policies, and each case must necessarily depend upon its own facts."

A contract containing clauses similar to those in the contract now before the court was held by this court to be reasonable and valid and conditions precedent to liability in the case of the *Maryland Casualty Company* v. *The Laurel Oil & Fertilizer Company,* reported in 116 Mississippi 283.

Of course, the liability of McDonald, the other defendant in the lower court is not a conditional liability and was not dependent upon the appellee's performing certain acts which he had agreed to do in the terms of the bond in this suit. The mere fact that McDonald was liable to appellee is no reason why appellee should have been given a decree against appellant. McDonald did not appeal from the decree rendered against him in favor of appellee. Ap-

pellee still has his judgment for the full amount the lower court found to be due him by McDonald.

For the reasons above stated, we respectfully submit that the lower court committed error in rendering a decree against appellant. Therefore, we respectfully ask that the case be reversed and a judgment be entered here dismissing the bill of complaint as to appellant.

*W. J. Pack,* for appellee.

Appellant first contends that appellee failed to comply with the third clause of the bond, wherein it is required: "That the employer on becoming aware of, or upon receiving notice of, any loss which may be made the basis of any claim hereunder, shall immediately notify the company."

In considering this case and especially in construing this bond, we invite the court's attention to the general rule of construction, and which seems to be uniformly followed. That since the bond is prepared by the company, it must be construed most strongly against the person who prepared it in case of ambiguity, etc. In the case of *The American Surety Co.* v. *Pauly,* 42 L. Ed. (U. S. Sup. Ct. Rep.) 977, the supreme court of the United States held in construing a similar bond:

"If looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, and agents of the surety company."

There is nothing in this record to show that K. C. Hall did not notify appellant of the shortage of McDonald as soon as he received the final proof and had the information upon which he could support a claim under the bond.

In the case of *Remington* v. *Fidelity & D. Co.,* 27 Wash. 429, 67 Pac. 989, it was said by the court in discussing a

similar provision in a bond: "Immediate notice ordinarily means, in this connection, within a reasonable time with due diligence under the circumstance, of a particular case, and without unnecessary or unreasonable delay, of which the jury are ordinarily to be the judges . . . And whether a time is reasonable or not depends upon the circumstances of a particular case." *Perpetual Bldg. & L. Assn.* v. *U. S. Fidelity & G. Co.*, 118 Iowa, 729, 92 N. W. 686; See, also, *First National Bank* v. *U. S. Fidelity & G. Co.*, 150 Wis. 601, 137 N. W. 742; *Rankin* v. *U. S. Fidelity & G. Co.*, 86 Ohio St. 267, 99 N. E. 314; *Bank of Tarboro* v. *Fidelity & Deposit Co.*, 120 N. C. 366, 83 Am. St. Rep. 682, 38 S. E. 908.

In the case of *Fidelity & G. Co.* v. *Western Bank*, 29 Ky. L. Rep. 639, 94 S. W. 3, the Kentucky supreme court in construing a provision in a bond of a bank employee that the employer should, on the discovery of any act of the employee, immediately give notice thereof to the surety company, said: "The employer is not bound to report its suspicions to the insurer, even though they may be strong enough to justify in the opinion of the employer, the discharge of the employee. After suspicion is aroused, it ought to pursue its inquiries with reasonable diligence and when satisfied that the defalcation exists, and the extent, or the substantial extent, of it, notice of the fact ought to be given promptly to insurer. Notice of each item found in the course of the examination need not be instantly given. This, we think, is the reasonable construction of the clause in the bond. . . . Unless the lapse of time is so long as to be obviously a noncompliance with the contract, the question whether the notice was timely given is one for the jury. See, also, *Aetna Indemnity Co.* v. *J. R. Crown Coal & Min. Co.*, 83 C. C. A. 431, 154 Fed. 545; *Fidelity & C. Co.* v. *Bank of Timmonsville*, 71 C. C. A. 299, 139 Fed. 101; *American Surety Co.* v. *Pauly*, 38 U. S. App. 254, 72 Fed. 470, affirmed in 170 U. S. 133, 42 L. Ed. 977.

An exhaustive note reviewing all of the authorities on this point up to 1916 will be found in L. R. A. 1916 E. page 715. Testing the facts of this case by the rule of the law announced in the above authorities, we find that K. C. Hall did give immediate notice to appellant when he received the information that would enable him to base a claim under the bond. He did not report the discrepancy found by Williams in January, 1919, because it did not even amount to a suspicion on the part of Hall of embezzlement. Hall and Williams both thought it was a mere discrepancy.

We submit that clause 3 of the bond required immediate notice to be given only after appellee had received notice or had become aware of any loss which may be made the basis of any claim under the bond. When could any claim be made under the bond? Certainly not until such facts had come to the notice of Hall or until he had become aware of such facts as would constitute larceny or embezzlement on the part of McDonald.

Counsel cites the case of the *Guaranty Co. of N. America* v. *Mechanics Sav. Bank & Trust Co.*, 46 L. Ed. 253 U. S. Sup. Ct. Rep. 124, as authority for trying to make a distinction between the clause of a bond requiring the employer, when he has knowledge, and those bonds that require the employer to immediately give notice when he becomes aware of or is notified of any facts of dishonesty, etc. The bond under discussion in the *Mechanics Sav. & Trust Co. case, supra,* contained altogether a different clause. The employee in that instance, was a teller in a bank and the bond company undertook to contract against acts of gambling, speculation, or indulging in any disreputable and unlawful habits or pursuits. In that bond the employer was required to give notice immediately upon becoming aware of the employee being engaged in speculations or gambling. The employer in that instance would not need to have books audited and placed in balance, requiring probably weeks of painstaking investigation to ascertain whether or not he had a basis of claim under the bond, but upon receiving any information that

the employee was guilty of gambling or engaging in speculations, it became the employer's duty to immediately notify, etc. The doctrine laid down in the *Auly case, supra,* was not only cited but was approved in this case.

Counsel next contend that because McDonald and appellee adjusted the apparent discrepancy over the eighty dollar item, and Hall, under misapprehension delivered the bond to McDonald, appellee's suit should be barred.

· McDonald was not a party to the contract of insurance between appellant and appellee, and was not entitled to receive the bond and the fact that Hall by error delivered the bond to McDonald could not in any way affect the rights of Hall as against the bond company for any defalcations later discovered, provided of course, these defalcations were discovered within the time limit of the bond and the proof shows that they were.

The next assignment of error pressed by counsel is that appellant should have credit for seventy-seven dollars salary paid McDonald and also for sixty-four dollars. We do not think there is any merit in this contention, because at the time this salary of seventy-seven dollars was paid, Hall did not know of any defalcation or shortage on the part of McDonald.

If he placed this money in the bank to the credit of K. C. Hall, trustee, then he must have appropriated to himself an equal amount of other funds belonging to Hall, because the chancellor found from all the facts that McDonald has embezzled one thousand, one hundred twenty-nine dollars and seventy-eight cents. There was no real conflict of testimony upon the whole in this case. It was a plain, positive case of defalcation which this court could readily see by a mere cursory examination of the record; but this fact the court will not have to find, because it has already been decided by the chancellor.

We, therefore, respectfully submit that there is no error of law shown in this record; that the facts have been found in favor of appellee by the court below and that the case should be affirmed.

WILLIAM H. COOK, J., delivered the opinion of the court.

This is an appeal from the chancery court of the Second district of Jones county. K. C. Hall, the appellee, was complainant in the court below, and the Maryland Casualty Company and Theo. McDonald were defendants. From a decree in favor of complainant, the Maryland Casualty Company prosecuted this appeal.

In June, 1918, K. C. Hall, appellee, was appointed as trustee to collect the outstanding notes and accounts due the stockholders of the Laurel Oil & Fertilizer Company, a corporation, then in voluntary liquidation. Appellee employed one Theo. McDonald to assist him in the collection of these notes and accounts, and the Maryland Casualty Company, appellant, executed a bond indemnifying the trustee against loss by reason of any acts on the part of McDonald amounting to larceny or embezzlement. McDonald entered upon the discharge of his duties on or about July 1, 1918, and the books, notes, and accounts of the Laurel Oil & Fertilizer Company were turned over to him. He continued in the employ of appellee until about January 1, 1919, and during the term of his employment he collected about one hundred and twenty-six thousand dollars. Shortly before the termination of McDonald's employment on January 1st a competent bookkeeper was employed to check the books and accounts that had been kept by McDonald, and in this checking there was discovered what was termed by the several witnesses a discrepancy or irregularity in the books and accounts, amounting to about eighty dollars, and, since McDonald failed to explain this discrepancy to the satisfaction of appellee, he declined to pay his December salary. McDonald at once entered suit in the justice court for this salary, but before the return day of this suit, appellee and McDonald reached a settlement of their differences and appellee paid McDonald his December salary and delivered to him the original bond, and McDonald dismissed the suit in the justice court.

About February 1, 1919, appellee employed accountants to make a complete audit of the books, notes, statements, and accounts which had been turned back to him by McDonald. These auditors continued their work on the books until about the middle of February, when, without completing the audit, they returned to their Memphis office. They did not return to Laurel to complete this audit until about the 1st of April, but before leaving in February they discovered certain unexplained irregularities in the books and reported these facts to appellee. On February 24th appellant wrote appellee the following letter:

"119792—Fidelity. K. C. Hall, Theo. McDonald.
"February 24th, 1919.
Mr. K. C. Hall, Laurel, Miss.—Dear Sir: We have been advised by our Ellisville agent of possible trouble under the above bond and are accordingly attaching blank proof of loss for statement of claim.

"If McDonald had been guilty of any offenses within the terms of our obligation, kindly fill out this proof with full details as to dates, origin, and nature of the various items, and have warrant issued for his arrest, in accordance with the sixth clause of our bond.
"Yours very truly,
"EMIL L. HOEN, Manager,
"Per EDWARD J. COOLAHAN."

On February 28th appellee replied to this as follows:

"Laurel, Miss., Feb. 28, 1919.
"Maryland Casualty Company, Emil L. Hoen, Manager, Baltimore, Maryland—Dear Sir: I acknowledge receipt of your favor of the 24th inst. The matter you wrote me about is being investigated, and therefore I am not in position at this writing to make any statement."

On April 15th the auditors filed a partial report with appellee showing a shortage of about one thousand and fifty dollars, and on April 16th appellee wrote appellant as follows:

125 Miss.—51

"Laurel, Miss., April 16, 1919.

"Maryland Casualty Company, Baltimore, Maryland— Gentlemen: In refer. to bond No. 119792, $2,000, Theo. McDonald, in favor of myself.

"I beg to advise that upon a recent audit by O. P. Cobb & Co., certified public accountants, Bank of Commerce & Trust Building, Memphis, Tennessee, it develops that this party is short about one thousand and fifty dollars. The results of this audit came to my address about the 15th inst., but, being absent then, I was unable to make the report until to-day. This I am doing in compliance with the third clause or provision of the bond. Within the next few days I will either send you myself or have the auditors send you proof and affidavit of the loss in further compliance with the fourth clause or provision of the bond.

"If you desire that the proof should comply with any certain form that you have I will ask that you mail it to the above auditors, as I think now that I will have them to make the proof from their office. Yours very truly."

On April 25th appellant replied to this letter as follows:

"119792—Fidelity.        K. C. Hall, Theo. McDonald.

"Mr. K. C. Hall, Box 393, Laurel, Mississippi—Dear Sir: Yours of the 18th came duly to hand and we are accordingly attaching blank proof of loss.

"As suggested in our letter of February 24th, if McDonald has been guilty of any offenses within the terms of our obligation, kindly fill out this proof with full details as to dates, origin and nature of the various items and have warrant issued for his arrest in accordance with the sixth clause of our bond.

"Yours very truly,
"EMIL L. HOEN, Manager,
"Per EDWARD J. COOLAHAN."

On May 3d, after appellee had received a complete and final report from the auditors, he mailed to appellant proof

of loss duly executed on blanks previously furnished by appellant. On May 9, 1919, appellant returned the proof of loss with the following letter:

"119792—Fidelity        K. C. Hall, Theo. McDonald.

"Mr. K. C. Hall, Laurel, Miss.—Dear Sir: Your favor of the 3d inclosing proof of loss came duly to hand, but we are not informed by Mr. McDonald that he not only disputes this claim *in toto,* but says that some time in January it was necessary for him to file suit against you due to the fact that you were withholding his salary to apply against alleged discrepancies in his accounts, and that pror to the trial you settled the matter, releasing the bond, and returning same to the principal.

"In view of Mr. McDonald's statement, therefore, it would appear that there is no liability upon our bond, and we are accordingly returning your proof. Our request for arrest is, of course, hereby withdrawn.

Very truly yours,

"EMIL L. HOEN, Manager,

"Per EDWARD J. COOLAHAN."

Appellant earnestly insists that this cause should be reversed for the reason that appellee did not comply with the third clause of the bond sued upon, which required appellee, as soon as he became aware of, or received notice of, any loss which might be the basis of a claim thereunder, to immediately notify appellant by registered letter; these sections of the bond being as follows:

"This bond is executed by the company upon the following express conditions, which shall be deemed conditions precedent to any right of the employer to recover hereunder: . . .

"Third. That the employer on becoming aware of, or upon receiving notice of, any loss, which may be made the basis of any claim hereunder, shall immediately notify the company by registered letter addressed to the company at its principal offices in Baltimore, Maryland. . . .

"Fourth. That the claim, if any, for loss sustained shall be delivered to the company by letter addressed to the company at its principal offices in Baltimore, Maryland, within ninety days after the employer shall have become aware of, or received notice of, any loss which may be made the basis of any claim hereunder, which claim shall be accompanied by a statement of such loss, verified by affidavit. The company shall not be liable for loss caused by the employee after the employer shall have first learned of any act which may be made the basis of claim hereunder; nor shall the company be liable for loss caused by the employee — after his resignation or removal."

This assignment of error calls for a construction of the meaning of the words "to become aware of any loss sustained by reason of acts of the insured constituting larceny or embezzlement." Does this provision require that, upon the discovery of any unexplained irregularity or discrepancy in the books or accounts of the employee which may create a suspicion of wrongdoing, the employer shall immediately report his suspicions to the insurer? We think not. When there are hundreds of accounts involved, where the services of trained accountants are required to check and trace the separate items of extended accounts, an immdiate charge of fraud or dishonesty against an employee upon the discovery of unexplained discrepancies or irregularities in the books or accounts, or upon a suspicion of wrongdoing, would be wholly unjustified and unwarranted. To be aware of a loss sustained by reason of acts constituting larceny, or embezzlement, there must necessarily be knowledge of facts which would constitute the crime, and the charge of so serious a crime cannot safely be based upon mere inferences or suspicions arising from unexplained irregularities or discrepancies in the books or accounts of the employee, and to be aware of such loss with sufficient certainty to justify the charge of larceny or embezzlement may and probably will require considerable time for investigation after a well-founded suspicion of wrongdoing has been aroused. *American*

*Surety Co.* v. *Pauly,* 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977; *First National Bank* v. *U. S. Fidelity & Guaranty Co.,* 150 Wis. 601, 137 N. W. 742; *Rankin* v. *U. S. Fidelity & Guaranty Co.,* 86 Ohio St. 267, 99 N. E. 314; *Bank of Tarboro* v. *Fidelity & Deposit Co.,* 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682; *Fidelity & Guaranty Co.,* v. *Western Bank* (Ky.), 94 S. W. 3.

In determining whether the notice given complies with the requirements of the bond, the facts of each case must control. In the instant case the testimony for appellee is positive that the alleged eighty dollars discrepancy, which was discovered in December, was believed to be a mere error, and that it did not create even a suspicion in the mind of the appellee that the employee had been guilty of any intentional wrong. Under these circumstances his failure to notify appellant of this discovery did not constitute a breach of the condition of the bond.

After the employment of accountants to audit these books and accounts, and it appears from the evidence that they were employed at the suggestion of appellant's local agent, appellee was notified by these auditors that there were discrepancies in the books which they were then unable to satisfactorily explain. It appears from the correspondence hereinbefore set out that this information was also communicated to appellant's local agent, and that this local agent notified appellant that there was a probable defalcation and loss under the bond. Appellant at once wrote to appellee in reference to the matter and requested a statement of the amount of the loss or claim. Appellee immediately replied by letter stating that the matter was then under investigation, and that he was not then in a position to make them any statement. This correspondence of itself was at least notice to appellant that the affairs of this employee were under suspicion, and that an investigation to determine the facts was then in progress. Immediately upon receipt of the final report of the auditors, appellee communicated the result to appellant, and we think, under the facts in evidence in this case, that

appellee has fully complied with the conditions of the bond as to notice of loss thereunder.

Appellant next contends that the settlement in January, 1919, between appellee and McDonald, the payment of his December salary, and the delivery to him of the original bond, constituted a full settlement and release of all further liability on the bond. McDonald was not a party to the contract of insurance, and was not entitled to receive the bond, and the fact that appellee paid him the final installment of his salary and by mistake delivered to him the bond does not affect the rights of appellee against the surety for any defalcations that were afterwards discovered and of which appellee had no knowledge at the time of the settlement with McDonald.

Finally it appears that at the date of the execution of the bond the employee was indebted to appellee in the sum of sixty-four dollars, and that this item was reported by McDonald as having been paid when in fact it had not been paid and properly accounted for. The provisions of the tenth clause of the bond are as follows:

"Tenth. That the company shall not be liable under this bond for any sum or amount owing to the employer by the employee at the commencement of the term of this bond, or for funds, moneys, or personal property thereafter used directly or indirectly by the employee to reimburse the employer for any such sum, amount or deficiency, or to discharge in whole or in part any debt or obligation contracted or incurred by the employee with the employer before or during the term of this bond."

Under this provision the insurer is not liable for this item of sixty-four dollars which was owing to the employer at the commencement of the term of the bond, and which the employee attempted to discharge by the improper use of other funds of the employer, and appellee was not entitled to recover this item. If appellee will enter a *remittitur* of sixty-four dollars, the decree of the lower court will be affirmed; otherwise it is reversed and remanded.

*Affirmed conditionally.*