UNITED STATES FIDELITY & GUARANTY CO. *et al. v.* CITI-
ZENS' STATE BANK OF MOORHEAD.*

(Division B.   April 16, 1928.)

[116 So. 605.   No. 26824.]

---

*Corpus Juris-Cyc. References: Agency, 2CJ, p. 476, n. 18; p. 479, n. 27; Banks and Banking, 7CJ, p. 539, n. 21; Embezzlement, 20CJ, p. 429, n. 26; p. 488, n. 66; Fidelity Insurance, 25CJ, p. 1091, n. 27, 28; p. 1094, n. 61; p. 1099, n. 12; p. 1114, n. 25; Indemnity, 31CJ, p. 444, n. 56; On the question of admissibility of evidence of other crimes in prosecution for embezzlement, see annotation in 62 L. R. A., pp. 226, 264; 43 L. R. A. (N. S.) 774; 22 A. L. R. 1022; 9 R. C. L. 1275; 4 R. C. L. Supp. 649; 5 R. C. L. Supp. 537; On ratification of unauthorized acts of cashier of bank, see 3 R. C. L. 455; 1 R. C. L. Supp. 830.

*Elbert Johnson,* for appellant.

390

*Forrest G. Cooper* and *P. W. Allen,* for appellee.

PACK, J. Appellee, the Citizens' State Bank of Moorhead, brought suit in the circuit court against E. H. Foster and the United States Fidelity &, Guaranty Company, appellants, on a fidelity bond executed by the appellant company to indemnify appellee against loss by reason of fraud or dishonesty, amounting to embezzlement or larceny, of Foster, cashier of appellee bank.

Foster was cashier of the Citizens' State Bank of Moorhead, and C. E. Young, cashier of the Bank of Commerce of Boyle, both being small town banks. For brevity, these banks will be referred to as Moorhead bank and Boyle bank.

The declaration was in three counts; each being predicated upon separate items of loss claimed to have been sustained. The first count alleged a fraudulent diversion by Foster of one thousand five dollars of the money of the Moorhead bank; it being alleged that Foster, as cashier, accepted, on June 15, 1926, from a Corinth bank, said sum for deposit, issued deposit slip therefor, but made no record entry thereof. The second count was based upon an alleged diversion of three hundred dollars, deposited by the Corinth bank on June 22, 1926, and was

handled by Foster in the same manner. The third count alleged that on June 25, 1926, the Boyle bank, through Young, drew a draft on the Moorhead bank for the sum of three thousand six hundred seventy-nine dollars and eighty cents which was paid, by Foster, with funds of the Moorhead bank; that the Moorhead bank was not indebted to the Boyle bank, neither having an account with the other, and that the Moorhead bank was under no obligation whatever to the Boyle bank; that Foster had positive instructions from his directors not to deposit any money of the Moorhead bank in the Boyle bank, and was prohibited from making loans in excess of three hundred dollars; that, at the time of the said transaction, the Boyle bank was insolvent, which condition was known to Foster; that, at the time of the said diversion, Foster was under personal and secret obligations to Young; and that, in furtherance of said fraudulent scheme, the said Foster concealed said transaction and made no entry thereof on the records of appellee bank. The Boyle bank failed in July, 1926, and was taken over by the state banking department for liquidation; and it was further alleged that Foster fraudulently diverted said last-mentioned sum by wrongfully cashing said draft.

Pleas of payment were filed by both defendants to the first and second counts. Defendants plead the general issue to the third count, and also filed three special pleas raising the point that the act of Foster in said transaction had been ratified by the Moorhead bank.

The appellee, Moorhead bank, joined issue on these special pleas, averring, in substance, that it did not have full knowledge of the fraudulent acts of Foster at the time of the alleged ratification, and there could be no ratification without full knowledge and intent to do so, and, further, that the alleged acts of ratification were merely efforts to pursue the stolen funds, not only to preserve its rights, but also to preserve the rights of the appellant bond company. The jury found in favor of the

Moorhead bank on the third count, and judgment was entered accordingly.

Three points are argued as grounds for reversal: First. It is contended the court admitted incompetent testimony. Appellee did not deny that Foster had refunded the items of one thousand five hundred dollars and three hundred dollars to the bank, but insisted that said payments should be applied to the item set out in the third count. In the development of this issue, it was shown that Foster received these items for deposit from the Corinth bank, and made no record entry thereof; but, when his acts were under investigation, he borrowed from one Smith and paid this money to appellee bank. Defendants having pleaded payment of the two items sued for in the first and second counts, and the plaintiff having joined issue thereon, any testimony pertinent to that issue was competent.

During April, 1926, the Moorhead bank, through Foster, drew two drafts on the Boyle bank, aggregating five thousand six hundred and thirty-five dollars. The proof showed that cash in the Moorhead bank was reduced contemporaneously with the drawing of these drafts. Foster declined to state who received this money on the ground that it might incriminate him. The Moorhead bank sustained no loss, however, by this transaction, as the drafts were later paid by the Boyle bank. This testimony was admitted over objection, as well as other acts of irregularity and alleged fraudulent dealings between Foster and Young. These transactions took place during the months of April, May, and June, prior to the date of the alleged diversion of the said sum of three thousand six hundred and seventy-nine dollars and eighty cents, which is alleged to have occurred on July 10th. A young lady employee of the Moorhead bank was permitted to testify, over objection, that some three or four months prior to the alleged diversion Foster instructed her to add one thousand five hundred dol-

lars to her cash at the close of the day's business, in order to force a balance. It is urged that none of this testimony was material to the main issue and was prejudicial to the appellants.

The theory of appellee was based upon the alleged fraud of the cashier, Foster, and that its loss was due to the fraudulent manipulation of its funds by Foster. In *Bernheim et al. v. Dibrell et al.*, 66 Miss. 199, 5 So. 693, this court held:

"The fraud of the debtor was an independent fact, and any evidence relevant to that fact was competent. Whatever she did at or about the time of the transaction under investigation calculated in its nature to throw light upon the intent with which she made that transfer, was competent whether it preceded or succeeded the transfer itself. It is not essential to the competency of such evidence that it should relate to transactions contemporaneous with the one investigated. If they are so closely related in time that the intent that governed in the one may fairly and reasonably be inferred to be the intent that controlled the other, then the one sheds light upon the other, and is therefore a relevant subject of investigation."

Since fraud was the gist of the inquiry, this testimony was competent. Intent is incapable of direct proof, and necessarily great latitude is allowed in establishing this element of the offense. 20 C. J. 485; Jones on Evidence, vol. 1, 717; 9 R. C. L. 1295.

Appellant's second contention is that the acts of Foster were ratified, and that this should bar recovery. The Boyle bank, acting through Young, drew the draft in question on June 25, 1926, at which time the solvency of this bank was in question. The draft was handled in the following manner: It was signed "Bank of Commerce by C. E. Young," payable to "ourselves," and forwarded to the Capital National Bank of Jackson; by it, on June 28th, indorsed, and sent to its correspondent Canal Bank

& Trust Company, New Orleans, which indorsed same on June 29th, and forwarded to Moorhead, where it was received by Foster about July 1st, but held until July 10, 1926, when he issued exchange on the Bank of Commerce & Trust Company, of Memphis, Tenn., payable to the Canal Bank & Trust Company, of New Orleans, which, of course, paid the proceeds to Boyle bank. As stated, the Boyle bank had no account with the Moorhead bank, and the latter was under no obligation to pay the draft. Foster carried this item in bank as cash from July 10th to July 16th, when he received two cashier's checks from Boyle in the sums of one thousand and eight hundred dollars and one thousand eight hundred seventy-six dollars and nineteen cents, respectively. Foster drew his personal draft on the Boyle bank for the difference of two dollars and ninety cents, and sent all three items to the Bank of Commerce & Trust Company, of Memphis, Tenn. On July 21st thereafter, this bank returned these items to the Moorhead bank unpaid. Foster then sent the three items to the Boyle bank, which failed about this time.

It was further shown that Foster issued exchange for the draft five days prior to the receipt of said cashier's checks, and the manipulation of this transaction caused a loss to the Moorhead bank in the total amount of the draft. The appellee, the Moorhead bank was not permitted by the court to show what ultimately became of the proceeds of the said draft, aside from showing that it went to the Boyle bank controlled by the said Young, its cashier.

Subsequent to the failure of the Boyle bank, the directors of the Moorhead bank began an investigation. They pressed Foster to make good this loss. The original draft was not among the records of the Moorhead bank; Foster having retained possession thereof. However, he finally delivered it to the directors. Upon discovery of the loss, and that the said two cashier's checks

had been returned to the Boyle bank and were then in possession of the state banking department, application was made to this department for issuance, to the Moorhead bank, of guaranty certificates to the amount of the said cashier's checks, and, upon the refusal of this department to issue same, suit was instituted by the Moorhead bank in chancery court seeking to compel the issuance of said certificates. This suit seemed to be pending at the time of trial of this case.

Did these acts constitute ratification of the alleged unlawful diversion or embezzlement of the bank's money by Foster? The obligation of the bond contract is in the nature of an indemnity. It is what is generally termed a fidelity bond.. For a valid consideration, it obligates to indemnify appellate bank against such "loss as may be sustained by the employer (the bank) by reason of the fraud or dishonesty of said employee (Foster) in connection with the duties of his . . . position amounting to embezzlement or larceny." The bank, believing its money had wrongfully gone into the Boyle bank, then being liquidated, sought to pursue the funds. If this effort had been successful, and all or part of the lost money recovered, it would have inured to the benefit of the bond company. Its liability had been in nowise increased nor its rights prejudiced by such action.

In *United States Fidelity & Guaranty Co.* v. *Bank of Hattiesburg,* 128 Miss. 605, 91 So. 344, this court held in part:

"The question is, As such surety, what did appellant do which under the law had the effect to discharge its indemnitor, Herren? We think nothing. There is nothing in the record in this case tending in the least to show that appellant was not from beginning to end, in the utmost good faith, seeking to save itself and thereby save the appellee from loss as such indemnitor."

We think this statement is applicable to the point now under consideration. 31 C. J. 444; 14 R. C. L. 60.

.Another principle of law against the contention of appellants is that knowledge of all the material facts must be present before ratification can be successfully relied upon as a defense. There was an issue of fact raised by the pleadings as to whether the directors of the Moorhead bank were advised of all the material facts touching the alleged wrongful diversion of the funds. The testimony was in conflict on this point. The trial court submitted this issue to the jury, and there was a finding in favor of appellee.

Knowledge of the material facts is essential before the principal will be held to a ratification of the agent's unauthorized acts. In 2 C. J., section 93, p. 476, the rule is stated as follows:

"As a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction."

The acts of Foster being of a tortious nature and committed contrary to express order of appellee, the alleged ratification must be explicit and made with full knowledge of the facts. 2 C. J. 479.

The proof showed that many of the facts were acquired subsequent to the application for guaranty certificates, and subsequent to the filing of the chancery suit. We do not think appellant's contention can be upheld.

This brings us to the third point: Was the loss covered by the bond? We understand appellant's contention to be that, before liability can be established, it must be shown that Foster actually appropriated the diverted funds to his own use, and that the proof must be sufficient to convict of the crime of embezzlement. The bond obligates:

To "make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of said employee in

connection with the duties of his office or position, amounting to embezzlement or larceny."

Line 46 of the bond reads: "It being the true intent and meaning of this bond that the company shall be responsible as aforesaid for moneys, securities, or property, diverted from the employer within the period specified in this bond."

A construction of that part of the bond quoted becomes necessary. This being a fidelity bond, it is now well settled that such contracts are to be construed by the same principles of law applicable to contracts of insurance. The language of the bond contract is that selected by the company issuing it for a consideration. If ambiguous, it must be construed most strongly in favor of the one indemnified. *Green* v. *United States Fidelity & Guaranty Co.,* 135 Tenn. 117, 185 S. W. 726; 25 C. J. 1091; case note in 100 Am. St. Rep. 775; *American Surety Co.* v. *Pauly,* 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; 14 R. C. L. 47. In the *Green case, supra,* the supreme court of Tennessee was construing a bond written by the same bonding company appearing herein, which bond employed practically the same language as above quoted. The bond company made the same contention as made here. The court held:

"The decided weight of authority is to the effect that it is not necessary in order to his relief that the employer introduce such proof as would convict the delinquent employee of the crime of larceny or embezzlement as defined in the criminal law"—citing *Champion Ice Mfg. Co.* v. *American Bonding Co.,* 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356; *City Trust, etc., Co.* v. *Lee,* 204 Ill. 69, 68 N. E. 485; *Rankin* v. *U. S. Fidelity & G. Co.,* 86 Ohio St. 267, 99 N. E. 314; 19 Cyc. 518.

In *Champion Ice Mfg. Co.* v. *American Bonding & Trust Co.,* 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356, the court held in part:

"It was not necessary, in order to fix the liability of appellee upon the bond, that appellant should produce,

in support of any claim that it might have arising there-under, such proof as would convict Weitkamp of the crime of larceny or embezzlement as defined by the laws of Kentucky. Such a narrow construction of the provisions of the contract is not required by the law, and was never contemplated by the parties to it.''

The same rule is stated in 25 C. J. 1094, section 5, as follows:

''Where, however, such a contract insures against loss through fraud or dishonesty, amounting to embezzlement or larceny, according to some of the authorities the words 'fraud or dishonesty' are to be taken in their ordinary sense, and it is not necessary that the acts of the employee should have been such as to subject him to an indictment and conviction for larceny or embezzlement.''

In *City Trust Co.* v. *Lee,* 204 Ill. 69, 68 N. E. 485, the court responding to the contention that the proof must be sufficient to convict of embezzlement, held:

''We do not agree with such contention, as we think it clear the phrase, 'amounting to larceny or embezzlement,' does not qualify the word 'dishonesty,' and that the appellant is liable upon the bond for any financial loss sustained by the appellee through the dishonesty of Morrow, even though the conversion of the rents collected by him to his own use would not subject him to an indictment and conviction for larceny or embezzlement.''

See, also, *National Surety Co.* v. *Williams,* 74 Fla. 446, 77 So. 212.

In order to establish liability on the bond, it was not necessary to show that Foster had appropriated the money to his own use. This would be true even under one or more of our statutory definitions of embezzlement. In *Hemingway* v. *State,* 68 Miss. 371, 8 So. 317, this court employed this language, ''There was no evidence showing that the defendant had actually converted or used any of the money;'' yet his conviction was upheld. It would

be different if an indictment should charge defendant with appropriation to his own use. The same principle is stated in 20 C. J. 427, section 16, as follows:

"To constitute a conversion of money or property so as to make out a case of embezzlement, accused need not appropriate the property to his own use, but is guilty if he fraudulently appropriates it to the use of another."

Appellants rely on *Maryland Casualty Co.* v. *Hall*, 125 Miss. 792, 88 So. 407. The court there did not have under consideration the question now before us. The contention was made that notice, as required by the bond, had not been given. Partial, but not complete, notice had been given of the alleged loss. On completion of the audit, the employer gave the required notice. The particular language of the opinion, which is cited as authority, was not necessary to a decision of that case, and is not controlling in the instant case. The basis upon which the parties contracted was not upon the enforcement of the criminal laws of the state; if so, that purpose could have been more clearly expressed and with fewer words. There are authorities holding to the contrary, but we prefer to follow what appears to be the weight of, and the best reasoned, authorities.

It is clear to us that the bond was breached, subjecting the maker to liability thereon. The judgment of the court below will be affirmed.

*Affirmed.*