FRANK GARDNER HARDWARE AND SUPPLY COMPANY *v.*
ST. PAUL FIRE AND MARINE INSURANCE COMPANY

No. 42507        January 7, 1963        148 So. 2d 190

*Melvin, Melvin & Melvin,* Laurel, for appellant.

*M. M. Roberts,* Hattiesburg; *Beard, Pack & Ratcliff,* Laurel, for appellee.

ETHRIDGE, J.

This is a suit by Frank Gardner Hardware and Supply Company (called Gardner) on a blanket employees' fidelity bond written by St. Paul Fire and Marine Insurance Company (called St. Paul). After presentation of evidence by both sides, the Circuit Court of Jones County, Second District, gave a peremptory instruction for the defendant, St. Paul. The judgment was based on an exception or exclusion in the policy of employees known by insured to have committed any fraudulent or dishonest act in the service of insured, and plaintiff's failure to show notice to insurer of the employees' prior dishonest acts, and its waiver or estoppel.

■■ ■ The Gardner company, located in Laurel, is engaged in selling wholesale hardware, building materials and plumbing supplies. It has approximately twenty employees. In 1956 Ray Bulger, working for Gardner as a commission salesman, embezzled from the company $2,149.44. At that time Gardner had an employees' fidelity bond written by American Guaranty and Liability Insurance Company, not St. Paul. Officers of Gardner learned of this defalcation by Bulger. He was suspended from his job, but subsequently was reinstated when he executed to Gardner a promissory note in that amount, dated February 25, 1956, co-signed by three other people. Witnesses for Gardner said Bulger "reimbursed us". Apparently Bulger's note to Gardner as payee was endorsed by Gardner and sold at a discount to a bank. At Bulger's direction, the secretary-treasurer of Gardner deducted from his commissions each month $100 to apply on the note, and paid that sum to the bank. These payments were made as late as November 1957, several months after St. Paul wrote the fidelity bond here in issue.

The blanket employees' fidelity bond written by St. Paul took effect on July 1, 1957. At that time and for

more than a year before the employees and officers of Gardner were fully aware of Bulger's fraudulent and dishonest acts, the embezzlements from Gardner which occurred in 1956.

Under the insuring agreement, St. Paul agreed to indemnify Gardner for all loss which the insured discovered before the expiration of three years from the effective date of the policy, which the insured should sustain through "any dishonest or fraudulent acts committed anywhere, alone or in collusion with others, by any employee or employees . . . , while this insuring agreement is in ,force as to the employee or employees causing such loss . . ." Following the phrase "employee or employees" was a lengthy parenthetical clause describing certain exclusions in the classification of employees. It provided that "employee or employees . . . shall not mean any partner of the insured, or any brokers, factors, commission merchants, consignees, contractors or any other agents or representatives of the same general character, *nor any person who is known by the Insured to have committed any fraudulent or dishonest act in any position in the service of the Insured or otherwise, . . .*" (emphasis added).

In short, the insuring agreement excluded from its coverage any person known by insured to have committed any fraudulent or dishonest act. The undisputed evidence showed that Bulger fell within this exception: He was a person known by the insured, Gardner, to have committed fraudulent and dishonest acts while working for insured in 1956. Accordingly, Bulger was not among the employees covered by the blanket policy. He was excepted from its coverage. 9 Appleman, Insurance Law and Practice (1943), Secs. 5661-5663; Holley Coal Co. v. Globe Indemnity Co., 186 F. 2d 291 (C. A. 4th, 1950); McGee v. Maryland Casualty Co., 240 Miss. 447, 452, 127 So. 2d 656 (1961); see also Continental Life Insurance Co. v. Turnbough, 151 Miss. 43, 117 So. 334

(1928); Ferguson v. Provident Life and Accident Insurance Co., 170 Miss. 504, 155 So. 168 (1934); 29A Am. Jur., Insurance, Sec. 1851; Anno., 68 A. L. R. 2d 8, 145, 204 (1959); 46 C. J. S., Insurance, Sec. 1317(2)(b), pp. 409-412. Bulger, therefore, was an excepted employee expressly excluded from the bond's coverage.

Appellant contends that the quoted exception clause in the insuring agreement applies only to employees who commit fraudulent or dishonest acts while it is in force, but we do not agree. Under the contract St. Paul agreed to indemnify insured from loss through dishonest acts of employees. Following that statement is a seventeen line, parenthetical clause describing employees, and excepting or excluding from coverage certain persons, including persons known by insured to have committed fraudulent or dishonest acts. Following this parenthetical statement clause is a clause beginning, "while this insuring agreement is in force as to the employee . . . causing such loss . . . ." This latter clause describes the period during which insured's employees are covered. It does not modify the parenthetical, exception provision, which excludes persons known by insured to have committed dishonest acts.

Gardner argues that St. Paul is estopped to rely upon the exception of Bulger from the bond, and St. Paul, through its agents, waived it. We do not think so, for two reasons.

First, the doctrines of waiver and estoppel cannot be used to extend the coverage of an insured policy or create a primary liability, but may only affect rights reserved in it. An insurance contract, under the guise of waiver, cannot be reformed to create a liability for a condition or employee excluded by the specific terms of the policy. 16 Appleman, Insurance Law and Practice (1943), Sec. 9090; Maryland Casualty Company v. Adams, 159 Miss. 88, 131 So. 544 (1931); Hartford Accident and Indemnity Co. v. Lockard, 239 Miss.

644, 124 So. 2d 849; Employers Fire Insurance Co. v. Speed, 242 Miss. 341, 133 So. 2d 627 (1961). The qualifications on this doctrine are not applicable here. See Travelers Insurance Co. v. Bank of New Albany, 146 So. 2d 351 (Miss. 1962). McGee v. Maryland Casualty Co., *supra,* 240 Miss. at 452, held that acts of an employee, in the same category as Bulger, were "expressly excluded by the terms of the (fidelity) bond." Waiver and estoppel, therefore, are not applicable in the instant case.

Second, even if waiver and estoppel were available, the evidence does not pose jury issues on these propositions. Bulger's defalcations from Gardner in 1956 occurred while another company's fidelity bond was in effect. Gardner's vice-president and bookkeeper, who negotiated with St. Paul's agents for the new policy, did not advise them of Bulger's previous dishonest acts. The new policy was a blanket employees' fidelity contract. Gardner's representatives simply handed to St. Paul's agents the old policies, including the former fidelity bond, which had attached to it a letter from the prior insurer that the word " 'employee' as defined in the captioned policy will include Ray Bulger regardless of Sections 5 and 11 of the policy." This was not such notice to St. Paul's agents as to constitute a waiver, nor are there any circumstances indicating an estoppel. Gardner's vice-president admitted that, when St. Paul's agents asked him whether Gardner had had any "loss or defaulting" in the past three years, he told them it had not. Hence even if estoppel and waiver were available to appellant, Gardner's evidence failed to make a jury issue on those two points.

Appellant purchased the new policy from St. Paul after it knew Bulger had embezzled from it over $2,000, did not tell St. Paul about these defalcations, and now seeks under the new policy to recover $5,569.77 for later

embezzlements by the same employee. Its claim is not one which appeals to a sense of equity and fairness.

Appellant relies upon such cases as World Insurance Co. v. Bethea, 230 Miss. 765, 93 So. 2d 624 (1957). However, the principle announced in *Bethea* does not apply where waiver and estoppel would extend the coverage of a policy to an employee excluded by its specific terms, as discussed above. Miss. Code 1942, Rec., Sec. 5706, pertaining to insurance agents, was never intended to change that principle. This was held in Saucier v. Life & Cas. Ins. Co. of Tenn., 189 Miss. 693, 198 So. 625 (1940). Employers Fire Ins. Co. v. Speed, 242 Miss. 341, 133 So. 2d 627 (1961), further analyzed this question. It declined to apply waiver or estoppel so as to cover additional subject matter. This was distinguished from estopping an insurer insisting on a forfeiture.

██ The general rule is stated in 72 C. J. S., Principal and Surety, Sec. 77(e), p. 561: "Ordinarily, where an obligee takes a bond as security for an agent or employee, who, to the knowledge of the obligee, has previously been guilty of defaults or misconduct involving a want of integrity, and the obligee does not disclose such facts to the surety, he is guilty of a fraudulent concealment of material facts, the disclosure of which good faith requires, and he may not recover of the surety, even though such default may have occurred in the service of another than the obligee." St. Charles Savings Bank v. Denker, 275 Mo. 607, 205 S. W. 208 (1918); Capital Fire Ins. Co. v. Watson, 76 Minn. 387, 79 N. W. 601, 77 Am. S. R. 657 (1899).

██ Accordingly, where a prospective surety seeks information as to the employee's previous conduct, it is the obligee's duty to make a full disclosure of all material facts within his knowledge bearing on the risk. Ibid., 72 C. J. S., p. 562; Sherman v. Harbin, 125 Iowa 174, 100 N. W. 629 (1904); Brillion Lumber Co. v. Barnard, 131 Wisc. 284, 111 N. W. 483 (1907).

■■ Moreover, concealment of previous defalcations of one for whom a fidelity bond is sought releases a surety from liability on the bond. If the surety makes inquiry of the employer, it is the employer's duty to disclose to it any prior defalcations of an employee within his knowledge. 50 Am. Jur., Suretyship, Sec. 328; Anno., 40 A. L. R. 1036 (1926); Anno., 12 L. R. A. (N. S.) 247 (1907); Anno., 11 Ann. Cas. 1031 (1909); A. L. I., Restatement of Security (1941), Sec. 124; 9 Appleman, Insurance Law and Practice (1943), Sec. 5291-5294, 5661-5679; Stearns, Suretyship (5th ed., 1951), Secs. 7.5, 8.8.

In National Surety Co. v. Rieves, 112 Miss. 747, 73 So. 732 (1916), an employees' fidelity bond was held invalid because of the failure of the principal to sign it, as required by the bond. Written application to the bonding company by the principal for issuance of the bond was not sufficient, and there was no waiver or estoppel of this provision. The bond was retained in the possession of the obligee bank, employer of the principal. United States F. & G. Co. v. Citizens State Bank of Moorhead, 150 Miss. 386, 116 So. 605 (1928), held that an employees' fidelity bond is in the nature of an indemnity, and is to be construed by the rules of contracts of insurance. In National Union Fire Ins. Co. v. Currie, 180 Miss. 711, 178 So. 104 (1938), it was said the liability of a surety is governed by the express terms and the extent of his undertaking. See also Maryland Casualty Co. v. Hall, 125 Miss. 792, 88 So. 407 (1921); Hartford Accident and Indemnity Co. v. Hattiesburg Hardware Stores, 49 So. 2d 813, 23 A. L. R. 2d 1053 (Miss. 1959).

McGee v. Maryland Casualty Co., 240 Miss. 447, 127 So. 2d 656 (1961), affirmed a jury verdict for a surety on an employees' fidelity bond. It was held that the bond did not cover "loss of inventory". The checks which were not paid were given for beverages sold, and

were an item of indebtedness rather than a loss by fraud or dishonesty. Moreover, before the bond was executed, previous checks issued by the employee had been marked "insufficient funds" and had not been paid. It was said that, if these checks were deemed fraudulent, then the obligee had notice of the previous defalcations, and the bond expressly stated that it should not apply to any employee after the insured had knowledge he had committed any fraudulent or dishonest act.

The fact that Bulger made restitution to Gardner for the 1956 embezzlement does not affect application of the exclusion clause in the fidelity bond. The contract applies to employees known by the insured to have committed any fraudulent or dishonest act in service of the insured or otherwise. Bulger's acts fell in that category, even though he may have made restitution. Employees Liability Assurance Corp., Ltd., v. Southern Produce Co., 129 So. 2d 247 (La. Ct. App., 1961).

Affirmed.

*McGehee, C. J., and Kyle, Gillespie and Rodgers, JJ.,* concur.