229 So.2d 573 (1969)
MISSISSIPPI HOSPITAL & MEDICAL SERVICE
v.
Buck LUMPKIN.
No. 45539.
Supreme Court of Mississippi.
December 15, 1969.
*574 Hedgepeth & Hedgepeth, Sally McDavid, Jackson, for appellant.
Smith & Smith, M.D. Tate, II, Picayune, for appellee.
BRADY, Justice.
This is an appeal by Mississippi Hospital & Medical Service from a final decree of the Chancery Court of Pearl River County, Mississippi, wherein the appellant was found to be indebted to Buck Lumpkin, the appellee, in the amount of $1,443.45 under a contract for hospital services. From this judgment an appeal was taken.
On June 5, 1955, Mr. Buck Lumpkin, appellee, executed a written application for insurance with the appellant, Mississippi Hospital & Medical Service, hereinafter designated as Blue Cross, seeking a subscriber's contract covering himself and his wife, Mrs. Lena K. Lumpkin. The subscriber's basic policy number 234066 was duly issued, effective July 1, 1955, to appellee and his wife. The subscriber's contract contains the usual exclusion of benefits on account of diseases, illnesses, or disabilities that existed on or before the effective date of the contract. While this subscriber's contract was in force and effect and during the year 1956, the wife of the appellee, Mrs. Lena K. Lumpkin, contracted cancer or carcinoma of the right breast, which a biopsy disclosed, and which required hospitalization and medical and surgical services, including a right radical mastectomy or amputation of the right breast, with the removal of lymph glands and tissue. Since this cancer or carcinoma did not exist on or before the effective date of the subscriber's contract, the appellant allowed full contract benefits for her hospitalization and surgical services in the year 1956. Thereafter, on September 7, 1957, the appellee made written application with the appellant for an endorsement or rider to his subscriber's contract that offered supplemental benefits to those offered by his subscriber's contract. The appellee failed to indicate in the space provided on the application that Mrs. Lumpkin had had cancer. Thereafter, while this Revised Catastrophic Illness Endorsement was in full force and effect, Mrs. Lumpkin again contracted or suffered a recurrence of cancer or carcinoma which required hospitalization and medical and surgical services in connection therewith requiring the mastectomy of the left breast. Since this condition, as the previous one, did not exist on or before the effective date of the *575 subscriber's contract, full subscriber's contract benefits were allowed pursuant to hospitalization and surgical services to the extent of $800.95. Since Mrs. Lumpkin had previously had cancer which existed and was manifest prior to the effective date of the Revised Catastrophic Illness Endorsement, the appellee was denied any benefits whatsoever under the Revised Catastrophic Illness Endorsement because of the explicit prohibitive provision of the endorsement. This provision is as follows:
PROVIDED, notwithstanding any other provision hereof, (1) no benefits shall accrue hereunder on account of cancer in a case where the patient has ever had cancer before the effective date hereof, or the date revised as set out above, which ever is the later.
In the absence of this provision and the exclusion of the subscriber's contract incorporated by reference into the endorsement, or if Mrs. Lumpkin had never had cancer prior to the effective date of the endorsement, the appellant would have been liable for additional benefits under the Revised Catastrophic Illness Endorsement to the extent of the additional sum of $1,443.45 for her recurrence of cancer.
The appellant urges that the lower court was manifestly in error as a matter of law in failing to give effect to the contractual provisions between the appellant and the appellee, since under the terms of the Revised Catastrophic Illness Endorsement no cancer coverage was provided for persons who had previously had cancer.
The record conclusively discloses that the disease of cancer was active and manifested itself as early as August 7, 1956, when it was diagnosed as such. The proof likewise shows that this disease was treated by surgery on August 16, 1956, and some fifteen to twenty x-ray treatments were given to Mrs. Lumpkin in an effort to eliminate this disease. The stern fact remains that appellee's Revised Catastrophic Illness Endorsement was not effective until October 1, 1957. The rights of the appellee and appellant are contractual and are governed by the conditions and terms of the endorsement. If the illness or disease existed prior to the time the endorsement became effective, the appellee has been paid all that she was entitled to, namely, the $800.95 which appellant was required to give appellee under the terms of her original policy.
We are forced to conclude, as the record conclusively shows, that since the appellee's bodily disease or illness of cancer was contracted before August 7, 1956, which is prior to the effective date of the endorsement of October 1, 1957, appellee's claim is not covered by the endorsement. Perhaps the lower court felt that since the appellant had paid on the prior claim of cancer it waived its rights under the above clause of the endorsement. To so conclude was error under the facts of this case and under our holdings in Protective Life Insurance Company v. Broadus, 205 So.2d 925 (Miss. 1968), and National American Life Insurance Company v. Williams, 204 So.2d 174 (Miss. 1967).
The chancellor was manifestly wrong in holding that the insurer was liable because the insured, being an uneducated man and unskilled in the sciences, relied entirely upon the examination by the defendant company of the medical records in its possession and of the representations made to him by the defendant corporation in its policy of insurance. As this Court speaking through Judge V.A. Griffith stated in Mixon v. Sovereign Camp, W.O.W., 155 Miss. 841, 848, 125 So. 413, 415 (1930), "the suggestion of illiteracy cannot prevail, for the manifest reason that there cannot be two separate departments in the law of contracts, one for the educated and another for those who are not. Certainly the laws on insurance could never be administered on any such basis."
In conclusion, this Court held in Old Equity Life Insurance Company v. *576 Jones, 217 So.2d 648 (Miss. 1969), and in Frank Gardner Hardware & Supply Company v. St. Paul Fire & Marine Insurance Company, 245 Miss. 320, 148 So.2d 190, 4 A.L.R.3d 1190 (1963), that the doctrine of waiver or estoppel cannot be used to create a primary liability or to increase the coverage of insurance contracts. While this Court recognizes the distinction between promissory and equitable estoppel as shown in the case of Old Equity Life Insurance Company v. Jones, supra, nevertheless we continue to follow the doctrine of non-expansion as to liability or coverage. The learned chancellor should have entered a judgment for the appellant.
For the foregoing reasons, the judgment of the lower court is reversed and judgment entered here for the appellant.
Reversed and judgment for appellant.
GILLESPIE, P.J., and RODGERS, JONES and SMITH, JJ., concur.