THE MISSISSIPPI MUTUAL INSURANCE CO. *v.* INGRAM & LAUD.

1. INSURANCE: CONTRACTS OF: HOW CONSTRUED.—Contracts of insurance, like all other contracts, must be construed according to the intention of the parties, as manifested by the words used, and according to their ordinary signification.

2. SAME: ASSURED IN A FIRE POLICY, RECOVERS WHOLE AMOUNT INSURED IN PARTIAL LOSS.—Under a fire policy, as usually made, the assured is entitled to recover from the underwriter the whole amount of a partial loss, if it do not exceed the amount insured, although the amount insured be less than the value of the property at risk.

3. SAME: SAME: CASE IN JUDGMENT.—The underwriters contracted "to make good unto the assured, their executors, &c., all loss or damage, not exceeding in amount the sum insured, as shall happen to the property by fire." The property at risk exceeded in value the sum insured, and a partial loss occurred, exceeding also the amount insured. *Held,* that as there was no provision in the policy for an average of the loss between the assured and the underwriters, the assured was, by the terms of the contract, entitled to recover the whole amount of the loss. *not exceeding the sum insured.*

In error from the Circuit Court of Monroe county. Hon. William Cothran, judge.

Ingram & Laud brought an action in the court below against the Mississippi Mutual Insurance Company, to recover upon a policy of insurance executed by the company to them, to the amount of $5000. The complaint, which sets out the policy *verbatim,* is as follows:—

The plaintiffs complain and represent, that on the 10th day of April, A. D. 1854, at, to wit, in the county aforesaid, the said Mississippi Mutual Insurance Company, for and in consideration of the sum of forty-five dollars, to them in hand paid by the said plaintiffs, insured the said plaintiffs one year against loss or damage by fire to the amount of five thousand dollars, on their stock of goods, wares, and merchandise, kept and to be kept in a two-story brick house, made and built of brick, &c., on part of lot No. 92 on Main Street, in the east ward of Grenada, Mississippi, as follows:—

"And the said company do hereby promise and agree to make good unto the said assured, or their executors, &c., all such loss or damage not exceeding in amount the sum insured, as shall happen

by fire to the property as above specified, from the 10th day of April, A. D. 1854 (at 12 o'clock at noon), unto the 10th day of April, A. D. 1855 (at 12 o'clock at noon); the loss or damage to be estimated according to the true actual value of the property at the time the same shall happen, and to be paid within sixty days after notice and proof thereof made by the assured in conformity to the conditions annexed to this policy." * * * * * *

"And in case of any other insurance upon the property hereby insured, whether prior or subsequent to the date of this policy, the assured shall not, in case of loss or damage, be entitled to demand and recover from this company, any greater portion of the loss or damage sustained, than the amount hereby insured shall bear to the whole amount insured upon said property."

The policy then continues by stipulations against loss occasioned by riots, &c.; and against the storing of goods deemed hazardous or extra-hazardous, &c. &c.

The complaint concludes as follows: "And the complainants further aver, that on the night of the 4th day of February, 1855, a fire broke out in the town of Grenada aforesaid, which extended to the storehouse of plaintiffs mentioned above, and that they lost of their goods, wares, and merchandise thus insured the sum of $6326 53. They further aver they had no other insurance on said property," &c.

To this the defendants answered, "that at the time of the fire in said complaint mentioned, the value of the plaintiffs' stock of goods in the storehouse therein described (and upon which stock of goods the insurance of five thousand dollars was made as alleged), was the sum of $18,137 53; and that of this stock there was saved, at the time, from said fire, goods to the value of $11,811, leaving the entire loss by fire $6326 53."

Wherefore defendants say that they are liable to said plaintiffs for their proportion of said loss, which they state to be the sum of $1865 51, with interest, but for no more.

The plaintiffs demurred to this answer, and it was adjudged insufficient. The defendants declining to plead further, a judgment by default was entered, with a writ of inquiry, and the jury assessed the plaintiffs' damages at $5600, for which judgment final was entered. The defendants thereupon sued out this writ of error.

Mississippi Mutual Ins. Co. *v.* Ingram & Laud.

*Sale* and *Phelan*, for plaintiffs in error.

This case presents a single question, and relates to the law of *insurance*,—a branch of the law, in reference to which, as our court has said, "questions are, with us, of rare occurrence, and the principles which govern them are not familiar to those whose minds are given to other branches of the law." 2 S. & M. 374. The haste with which this brief must now be prepared, forbids that critical and consecutive examination or argument which the point demands.

The insurance company executed their policy to the amount of $5000, upon Ingram & Laud's "stock of goods, wares, and merchandise, *kept and to be kept* in a two-story brick house," &c.

During the continuance of this policy, a fire occurred, which destroyed a certain portion of the stock of goods so kept, &c.

At the time of the fire, the amount of the stock of goods, at *risk*, in said building, was $18,137$\frac{53}{100}$. Of this amount there was saved the amount of $11,811, leaving the entire *loss* at $6326$\frac{53}{100}$. Ingram & Laud insist that the company should pay the full amount of $5000. We say not so, and insist that they were their *own insurers*, for the value of the goods at *risk* not covered by our policy, and that they must share the loss, in the proportion which the amount of their *own* insurance, bore to the amount at *risk*, and that we must do the same. The proportion of our insurance was, in round numbers, as $5000 was to $18,000. The proportion of *their own* insurance was as $13,000 was to $18,000, and in this proportion must the *loss* of $6000 be borne by each. It is needless to be more accurate, as the *principle* involved is only important in this court.

These *facts* and this *principle* were presented in the answer filed to the complaint. The answer was *demurred* to, the demurrer sustained, and the correctness of that decision is the single point involved in this record.

1. Where property is only *partially* insured, the *owner* becomes his *own* insurer for the *excess* at *risk*, at the time of the *loss ;* and, in case of *partial* loss, he bears his own portion, and the *insurer* his portion, in the *proportion* which the amounts, thus respectively insured, bear to *all the insurable interest at risk*, at the *time of the loss.*

" If the *value* of his (the insured) interest exceeds the sum *insured*, the *excess* of interest is said to be *uncovered by the policy*, and the *assured* to be *his own insurer to that extent.*" 1 Arnould on Ins. 3, 333, 338; 7 Mass. 364; 14 Wendell, 399; 12 Wheat. 383, Rep. 550.

The principle above stated is so fully established, that it could not be denied; but a distinction was sought to be drawn between *goods* in a *ship*, and *goods* in a *house.* The unreasonableness of any such distinction, to the mind of the court, must be too palpable to need refutation. The cases above referred to, were cases of marine insurance, and the work of Mr. Arnould is confined to marine insurance. But the *same* principle, as a *general* principle, is laid down by Mr. Phillips, which is a work on "*The Law of Insurance*" generally. Under the head of "*The amount payable,* salvage loss," he says :—

" The *underwriter* is liable for loss only on the amount or *proportion insured by him* on a ship, OR OTHER SUBJECT, whether the *remainder*, if any, is insured by other underwriters, *or is at the risk of the owner.*" 2 Phil. on Ins. 227, § 1476.

Again: " The *general principles* applicable to policies against *fire on land*, coincide with those applicable to *marine* insurance." Ib. 44, § 63.

He then proceeds with a long catalogue of the *general particulars* and *peculiarities* incident to fire policies; and, although he alludes to the insurance of "*goods*," he makes no such distinction as the one insisted on in this case. The *distinction* is a most palpable and all-important one, if it exists; and it is not reasonable or probable, that he would have omitted to mention it *at all;* but surely not when he had declared, upon the same page, that the "*general principles*" of fire and marine policies were the *same.* The principle for which we contend, in a marine policy, is plain and universal.

Again, he says, in relation to this very principle :—

" If the sum insured is less than the value of the property (not ship or cargo), the assured stands underwriter for himself on the excess. If the sum of $800 is insured on property worth $1000, then, in any case of loss, whether partial or total, or particular or general, the underwriter pays four-fifths of it, and one-fifth falls

upon the assured himself, unless he has effected other insurance on this excess." 2 Ib. 2, § 1176. And this principle he directly applies to "goods burnt." Ib.

These general principles, "though not inserted, expressly, on the face of the instrument, are of exactly the same binding authority as though they were." * * "They are regarded as so much a matter of course, that it would be a needless ceremony to express them in form." 1 Arnould, 41, § 36; 1 Phillips, 51, § 67.

The only way in which the parties could avoid the application of this principle would be by an express provision to that effect. There is nothing in this policy repugnant to its application, but the reverse. It says, "the loss or damage is to be estimated according to the true and actual value of the property at the time the same shall happen." What was this "property?" Was it such goods and wares as the assured might arbitrarily say were covered by the policy, as distinct from the general bulk? No; it was "the stock of goods" then "kept," or "to be kept," in that house. The assured were authorized to increase or diminish the value of that stock at their pleasure; but, in estimating our portion of loss, the amount on hand at the time of the fire, was made the standard. In other words, and the words of the books, with which it is synonymous, "the value of the insurable interest, at risk, at the time of the loss." If, at the time of the loss, the stock had been diminished to $5000, and all had been burnt, the company must pay the whole $5000. If it had been diminished to $6000, then it would have had to pay five-sixths of any loss less than total, and so on. The proportion of the risk of the owner keeping pace in proportion as he increased our risk, by increasing the stock of goods with which our risk was identified. In an inverse ratio could the owner diminish his risk as his own insurer, upon the excess above the amount of our policy, by diminishing the value of that stock, and consequently diminishing our risk. He increases our risk by having it identified with a large stock. He diminishes our risk by having it identified with a small stock; whilst, at the same time that he diminishes our mere risk, and his own proportion of loss, he thereby increases the amount of our payment, should a partial loss happen, notwithstanding our diminished risk. The principle is just and reasonable. If a person pays a premium upon a certain amount

of goods, without specifying what goods, and reserves the right to keep any amount of goods, to each and every piece of which that policy applies, by what right, in case of partial loss, does he say that the goods, which were lost, were those to which the policy applied, but to those that were saved it does not apply? In legal contemplation, as well as in equity and fact, that $5000 was divided out in proportions, by which an equal amount of it attached to every separate cent's worth of the whole $18,000 worth. That proportioned amount cannot be separated from the value of each cent, whether the goods be lost or saved. The proportion, therefore, of five to eighteen, inevitably attached to each cent's worth of that "stock of goods," both lost and saved.

We have not seen the brief of opposite counsel, and cannot examine any authorities to which he may refer. We remember that those read on the trial below were all cases from the Massachusetts Reports; not one of which we then regarded as in point. There was one, perhaps two, which decided that there was no distinction between partial and total losses in an insurance upon buildings where the amount of the loss equalled the amount insured. Also, that materials saved from a building consumed by fire could not be taken into the estimation in determining the amount of loss. This distinction between an insurance upon buildings and goods may very reasonably exist; for, in the case of loss by fire to houses, it would almost be impossible to apportion the loss between the amount for which it was insured and the value above the risk. The house is a unit, and it might well be held that, if the loss equal or exceed the amount for which it was insured, the insurer shall pay that amount, without reference to what was saved. It is almost impossible that what can be saved can be so estimated in its value to the owner as to be the subject of average between him and his insurer.

But it is needless to argue whether this principle has been adopted in Massachusetts. The subject is there regulated by statutes and by-laws, under which its decisions are made, and which can determine nothing in this case. In one of the cases referred to by counsel below, we remember the counsel in that case referred to the "Revised Statutes, chap. 37, § 28." It is 9 Mass. 205, we find, and the strongest case read by counsel. This was the case of

the total loss of a building. The materials of the building which were not destroyed were estimated at $500. The court below permitted the value of the materials to be placed as an offset to the amount insured. This being a total loss, it was a question of salvage, which is "the part or remnant of the subject insured, which survives the fire in a total loss." 2 Phillips, 234, § 1488. The court say, "The law of marine insurance respecting salvage does not apply to the fire policies of mutual insurance companies." The case at bar is not the case of a total loss of a house, and a question of salvage, but a partial loss of a stock of goods, and a question of average, which is "a loss in which divers interests contribute a part of its value." 2 Phillips, 64, § 1269. In 8 Metcalf, 119, the court say, "The contract of insurance against fire, as used and practised by the mutual insurance companies in this commonwealth, depending upon the operation and effect of the act of incorporation and the by-laws, and the policy and written representations in each particular case, is somewhat new and peculiar; and the rules applicable to it have not been fully and definitely settled by judicial decision." See also 7 Mass. 369.

The court will excuse the imperfection of this brief, from the very rapid manner in which it has been prepared, with the view of placing it on the file before the case should be called.

*Reuben Davis*, for defendants in error.

The one point in the record for the consideration of this court is involved in the action of the court below in sustaining the demurrer. The examination and proper understanding of the legal effect of the language and terms of this contract, will leave no doubt in the mind of the court in regard to the correctness of the court in its decision. The defendants, in consideration of the sum of forty-five dollars, to them in hand paid by the plaintiffs, insured Ingram & Laud, of Grenada, Mississippi, against loss or damage by fire, "to the amount of five thousand dollars," &c. "And the said company do hereby promise and agree to make good unto the said assured, all such loss or damage not exceeding in amount the sum of five thousand dollars." Now, in observance of the rule asserted by Phillips on Insurance, page 470, vol. 1, that fire policies shall be reasonably construed, can the decision of the court below be

questioned for its correctness ? In consideration of forty-five dollars, the defendants insured the plaintiffs against all "loss or damage by fire," to the extent of five thousand dollars. Does not this language show that defendants intended to insure the plaintiffs against any and all loss to the extent of five thousand dollars, and did not the plaintiffs understand that any and all loss to the extent of five thousand dollars was covered by this policy? The consideration, forty-five dollars, is for the full sum of five thousand dollars of insurance, and is therefore conclusive upon the point of intent—of understanding.

It will be observed that this policy is against "all damage not to 'exceed' five thousand dollars." Certainly, then, when the plaintiffs show their loss, as in this case, to have exceeded or equalled five thousand dollars, their right to a recovery for that sum cannot be denied.

Now, an examination of this policy forces me to the conclusion that it was intended and understood by the contracting parties to be and operate as an indemnity to the extent of the sum insured.

I think the view taken by the defendants in the construction which they insist should be put upon this contract, arises out of mistaking it for an open policy, or assimilating it to a marine policy, which admits of average. This is a valued policy, and fixes the amount of insurable interest: 1 Arnould on Insurance, 309; and if it could be assimilated to marine policies, is not one of the class of cases in which average is allowed. The rule would, I admit, be otherwise in open policies. But I have said that fire policies differ materially from marine in this, that they are in the nature of indemnities. Having modern origin, the wisdom and prudence of the age, either in the charter or by-laws, prohibits them from taking risks equal to the full value of the property insured, and this prohibition is intended as a preventive of fraud and great evil, by withholding motive for burning the property and ruining others.

Fire policies not unfrequently limit the proportion of the value of the subject that shall be insured, either by proviso in the body of the policy, or by the representations by the insured referred to in the policy or by statute. 1 Phillips on Insurance, 876; 10 Metcalf, 211; 5 Denio, 326; 12 Metcalf, 555; 8 Johns. Rep.

307; 8 Metcalf, 114; 9 Ib. 205; 13 Wendell, 92; 16 Ib. 481; 10 Pickering Rep. 40 ; 2 Phillips on Insurance (2d ed.), 229.

Now apply this rule to this policy, and we see that the contracting parties did limit the proportion of the goods for which they would be liable to the sum of five thousand dollars, and to that extent the defendants agreed fully to indemnify.

*George S.* and *W. S. Yerger, Jr.,* and *F. Anderson,* on same side.

The facts of this case are simply that the plaintiffs in error, being an insurance company, insured certain goods, wares, &c., of defendants in error, to the amount of $5000.

The whole value of the goods, &c., upon which an insurance to the amount of $5000 had been obtained, was estimated to be at the time of the loss by fire about $18,000.

The actual loss sustained by the insured exceeded in amount the sum insured, to wit, $5000, as the record shows.

The question then arises, whether the insured can recover from the insurers the entire sum of $5000, as agreed upon in the policy, or whether they can only recover a certain portion of this amount, ascertained upon the principle of particular average.

The counsel for plaintiffs in error, contend that the principle of particular average consists in this : when a person insures property collectively of a greater value than the amount insured, he shall only recover in the proportion which the whole bears to the part insured. As for instance in this case, as $18,000 (collective value of goods at the time of loss) is to $5000 (the amount insured).

According to this method of apportionment, the insured would only be entitled to recover about $2000, instead of $5000, as stipulated in their contract of insurance.

It is contended, in support of this position, that this is the rule followed in adjusting marine losses of this nature, and that there is no difference between marine insurance and fire insurance.

It is unimportant, in this instance, to inquire whether this is the law or not. The main matter to be ascertained is, what is the intention of the parties as evidenced by their written contract ?

One clause in the policy reads as follows: " And the said company do hereby promise and agree to make good unto the said

assured, or their executors, administrators, and assigns, all such loss and damage, not exceeding in amount the sum insured, as shall happen by fire to the property as above specified."

Here, as the court will observe, the insurance company bind themselves to pay any loss incurred upon the property, on which the policy attaches, not exceeding in amount the sum insured; and there is no other clause in the policy which negatives the binding force of this stipulation.

In some fire policies it is agreed that the partial loss shall be adjusted according to the principles of marine insurance. 2 Phillips on Insurance, 229.

But "under the fire policies as usually made, the assured recovers the whole amount of a partial loss, if it does not exceed the amount insured, though the amount may be less than the property insured," or, in other words, less than the policy covers. This authority directly decides the point. 2 Phillips on Insurance, 229.

At one time it was necessary, as Mr. Ellis in his work on Insurance says, for the English insurance companies to insert an average clause in their policies, in consequence of the unusual number of fires prevailing in the agricultural and manufacturing districts. Ellis on Insurance, 16; 4 Law Library.

And in the appendix to this work is given a specimen of the average clause they then were in the habit of inserting, which provided, in direct terms, that a partial loss of this nature should be apportioned according to the principles of marine insurance. Ellis on Insurance (Appendix), p. 222.

But in this case no average clause is inserted in the policy.

But the cases in Massachusetts settle the matter beyond dispute; and it might be well to say in this connection, that the counsel for plaintiffs in error are mistaken in supposing that the decisions on this subject, in this State, are based upon a statute peculiar to it. The statute they have reference to, provides that no property shall be insured to an amount exceeding in value three-fourths of the value of the property insured. See statute cited, 9 Metcalf, 210.

In *Trull* v. *The Roxbury Mutual Fire Insurance Company* (3 Cushing, 267), the court say: "The distinction between the contract of fire insurance and that of marine insurance, and the mode

of adjustment and satisfaction, is marked and obvious. In fire policies, the insured recovers the whole loss if within the amount insured, without regard to the proportion between the amount insured, and the value of the property at risk; whereas, in marine policies, the insurer pays only such a proportion of the actual loss as the sum insured bears to the value of the property at risk. For instance, in fire policies, if the sum insured be $2000 on property worth $10,000, and the assured sustains an actual loss on the whole ($2000), he recovers the whole $2000. But in a like case in a marine policy, he would recover one-fifth only, or $400, being the proportion the sum insured bears to the value of the property at risk, the assured himself bearing the other four-fifths of the risk."

They further say that, "It is the payment of the whole actual loss sustained on the whole property at risk, not exceeding in value the sum insured, without regard to any apportionment between the sum insured and the property at risk, or to any abandonment, or technical or constructive total loss, or salvage."

They cite several cases upon the point.

In the case of *Strong* v. *Manufacturers' Ins. Co.*, 10 Pickering, 40, the same point is decided.

In the case above, cited from Cushing's Reports, the court say that, in the absence of fraud, the valuation is conclusive upon both parties, and cited upon the point 4 Metcalf, 206; 10 Ib. 111.

Without any reference to the terms of the contract itself, it has been decided by the Supreme Court of Michigan, in the case of *Rossiter* v. *Chester*, 1 Douglass, 154, that the doctrine of average was peculiar to the maritime law; and that, therefore, its principles could not operate beyond the ebb and flow of the sea, nor apply in a court of common law.

FISHER, J., delivered the opinion of the court.

The plaintiffs below brought this action in the Circuit Court of Monroe county, upon a policy of insurance entered into by the defendants.

The question for decision arises upon the demurrer of the plaintiffs below to the defendants' answer to the complainant. The answer is as follows: "That at the time of the fire in said com-

plaint mentioned, the value of plaintiffs' stock of goods in the store-house therein described (and upon which stock of goods the insurance of five thousand dollars was made as alleged) was the sum of eighteen thousand, one hundred and thirty-seven dollars and fifty-three cents. That, of this stock, there was saved at the time from said fire, goods to the value of eleven thousand, eight hundred and eleven dollars, leaving the entire loss by fire six thousand, three hundred and twenty-six dollars and fifty-three cents." "Whereupon defendants say they are liable to said plaintiffs for their proportion of said loss, which they state to be the sum of eighteen hundred and sixty-five dollars, with interest, but for no more."

The position assumed on behalf of the defendants is, that the plaintiffs were their own insurers for all the goods in the house not covered by the policy; and, that this being the case, the loss must be averaged or apportioned according to the risk assumed by the parties.

Contracts of insurance, like all other contracts, must depend for their construction upon the language employed by the parties to express their intentions; and this leads to an examination of the contract, which, so far as it relates to the question under consideration, is as follows: "And the said company do hereby promise and agree to make good unto the said assured, or their executors, administrators and assigns, all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property as above specified, from the tenth day of April, 1854, unto the tenth day of April, 1855." This language does not appear to admit of construction. All loss occasioned by fire must be understood according to the plain import and meaning of the words employed, and must mean the actual loss sustained by the plaintiffs, not exceeding the amount of five thousand dollars. The books, however, settle this question: "Under a fire policy, *as usually made*, the assured recovers the whole amount of a partial loss, if it does not exceed the amount insured. The amount insured may be less than the value of the property insured." 2 Phil. on Insurance, 229.

What is the plain meaning of this authority? It is that fire policies, *as usually made*, do not provide for a general average of the loss between the assured and the underwriters. Or, in other words,

that the contract must be understood and enforced, like any other contract, according to the manifest intention of the parties, to be gathered from the words used, which must be taken according to their ordinary meaning.

Judgment affirmed.