GRIFFIN, et al. *v.* MARYLAND CAS. Co.

Mar. 10, 1952.

No. 38296 (57 So. (2d) 486)

Guyton & Allen, and H. T. Carter, for appellants.

John H. Holloman and W. J. Threadgill, for appellee.

**Lee, J.**

E. Frank Griffin and J. Rigg Vaughn, doing business as Tower Loan Brokers, purchased a fidelity insurance policy from the Maryland Casualty Company. It was effective for a period of one year from December 18, 1948, and was renewed for a like period with slight changes as to form only. In both policies, the coverages were for employee dishonesty and depositors forgery. The limits of liability were $2,500 and $5,000, respectively.

The lawsuit involves a construction of these two provisions. The pertinent parts are as follows:

"Insuring Agreements

"Employee Dishonesty Coverage—Form B

"I. Through any fraudulent or dishonest act or acts, committed anywhere by any of the Employees acting alone or in collusion with others, including loss of Money and Securities and other property through any such act or acts of any of the Employees, and including that part of any inventory shortage which the Assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the Employees, the amount of insurance on each of such Employees being the Limit of Liability applicable to this Insuring Agreement I. * * *"; and

"Depositors Forgery Coverage

"V. For the account of the Assured or for the account of any bank or banks in which the Assured has a checking or savings account, as their respective interests may appear, caused by forgery or alteration of, on, or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by, or drawn upon the Assured, or made or drawn by one acting as agent of the Assured, or purporting to have been made or drawn as hereinbefore set forth, including (a) any check or draft made or drawn in the name of the Assured, payable to a fictitious payee and endorsed in the name of such fictitious payee, (b) any check or draft procured in a face to face transaction with the Assured or with one acting as agent of the Assured by any one impersonating another and made or drawn payable to the one so impersonated and endorsed by any one other than the one so impersonated and (c) any payroll check, payroll draft or payroll order made or drawn by the Assured, payable to bearer as well as to a named payee and endorsed by any one other than the named payee without authority from such payee, whether or not any endorsement mentioned in sub-division (a), (b) or (c) of this paragraph be a forgery within the law of the place controlling the construction thereof. * * *"

Griffin and Vaughn were brokers of small loans. They secured such loans for their patrons through Louisiana Discount Corporation of Bogalusa, Louisiana, and handled all of the details in connection therewith. One of the considerations for their brokerage fees was that they became guarantors of the loans. They also collected the installment payments and remitted them to the corporation. They operated a branch office at West Point. It was managed by one Jimmy Weir, whose dishonest acts and forgeries entailed a loss to them of approximately $5,500. Disagreement over the meaning of the provisions of the policy resulted in the filing of this suit.

The plaintiffs, in their original and amended declarations, charged that Jimmy Weir, acting as their agent and in the course of his employment, collected the proceeds of 101 notes, which were payable to the Louisiana Discount Corporation; that he entered the items on the books, but failed to remit to the corporation; and that he misappropriated $1,703.80 thereof, and converted it to his own use.

They further charged that Weir falsely and fraudulently forged the names of the makers of 93 promissory notes, payable to Louisiana Discount Corporation, 67 of which were the names of real persons, 14 were bogus, and 12 unknown or bogus; that he attached such forged notes to drafts, drawn on Louisiana Discount Corporation, and obtained the loan values thereof; and that he appropriated the proceeds, $3,697.63, to his own use.

They further charged that they were required to reimburse Louisiana Discount Corporation for the total amount of such misappropriations, namely $5,401.43; that Maryland Casualty Company was willing to, and did, pay $2,500, being the coverage provided for employee dishonesty; but that it declined to pay any of the coverage for depositors forgery. The demand of the plaintiffs was for judgment for the balance, namely, $2,901.43.

The Insurance Company filed a demurrer, listing eight grounds, which was sustained; and when the plaintiffs declined to plead further a final judgment of dismissal was ordered. From that judgment, they appeal.

We take up and pass on the several grounds of demurrer as follows:

(1) It was contended that plaintiffs could not maintain their suit because they were in partnership with a corporation. The declaration did not show that a partnership existed between the parties, and that ground was untenable. In this connection compare Tower Underwriters, Inc., v. Lott, 210 Miss. 389, 49 So. (2d) 704.

(2) It was next contended that Louisiana Discount Corporation, a necessary party, was not joined.

Neither was this ground maintainable because the controversy was between the plaintiffs and the Insurance Company over liability for the acts of an agent of the plaintiffs. Hence the Corporation was not a necessary party.

(3) It was further assigned that the declaration was vague and indefinite. As a matter of fact, the allegations of the declaration are clear and definite. But if they were susceptible of being indefinite, it was incumbent on the defendant to ask the court to require its adversary to render a bill of particulars. Section 1499, Code of 1942.

(4) Another ground of the demurrer was that, if plaintiffs had a cause of action, it should have been brought in the chancery court. Actually the suit was properly brought in the circuit court. However, the institution of a suit in an improper court is not sufficient grounds to deny recovery. The court, in such a case, should transfer the cause. Section 157, Constitution 1890. Moreover, the opposite party should ask for such transfer. Layne Central Company v. Gulf Coast Ice Company, 171 Miss. 94, 157 So. 84; Bradley v. Howell, 161 Miss. 346, 133 So. 660, 134 So. 843; Murphy v. City of Meridian, 103 Miss. 110, 60 So. 48.

(5) The fifth ground assigned was that the declaration sought to vary the terms of a written contract. Actually the declaration sought an interpretation, not a reformation, of the insurance contract, and the demurrer should not have been sustained on that ground.

The other grounds of demurrer challenged the sufficiency of the plaintiffs' cause of action.

Under our law, if an insurance contract is plain and unambiguous, it should be construed as written, and like any other contract. Mississippi Mutual Life Insurance Company v. Ingram & Laud, 34 Miss. 215; Continental Casualty Company v. Hall, 118 Miss. 871, 80 So. 335.

If unambiguous, its meaning should be determined, irrespective of the construction of the parties. Brown v. Powell, 130 Miss. 496, 94 So. 457.

█ █ Where it is susceptible of two reasonable interpretations, that one will be adopted which sustains the claim for indemnity. New York Life Insurance Company v. Blaylock, 144 Miss. 541, 110 So. 432.

If ambiguous, it should be construed most strongly in favor of the insured. United State Fidelity and Guaranty Company v. Citizens State Bank of Moorhead, 150 Miss. 386, 116 So. 605; New York Life Insurance Company v. Nessossis, 189 Miss. 414, 196 So. 766.

If the language is doubtful or ambiguous, a reasonable construction in favor of the insured follows. The Great American Insurance Company v. Bass, 208 Miss. 436, 44 So. (2d) 532.

(Hn 8) A policy must be construed in the light of its purposes and the hazards against which it was designed to protect. Fleming v. Travelers Insurance Company, 206 Miss. 284, 39 So. (2d) 885.

The two coverages protected against employee dishonesty and depositors forgery. The object of the former was to take care of loss "through any fraudulent or dishonest act or acts" of the employee. Obviously, forgery is a fraudulent or dishonest act. But all fraudulent or dishonest acts do not amount to forgery. The clear purpose of that provision was to insure against all fraudulent and dishonest acts.

█ █ In addition to that kind of protection, the policy also provided by the second coverage for depositors forgery, that is, "For the account of the Assured * * * caused by forgery * * * of * * * any * * * promissory note, * * * made or drawn by one acting as agent of the Assured, * * *."

The foregoing language plainly covers the 93 promissory notes. It was charged that Weir signed both real and fictitious names to them; that he uttered and delivered them to Louisiana Discount Corporation as being genuine;

that he obtained the loan values of such notes; and that he misappropriated the proceeds and converted them to his own use. The last paragraph of the depositors forgery provision, though not set out herein, expressly excludes "losses caused by forgery of  *  *  registered or coupon obligations  *  *  *''. In like manner, if the Insurance Company purposed to exclude forgeries of promissory notes, it could have so provided. It not only did not exclude, but, on the contrary, it expressly included, protection against that kind of forgery.

It follows that the learned trial judge was in error in sustaining the demurrer, and on account of such error, the cause is reversed and remanded.

Reversed and remanded.

**Roberds, Alexander, Arrington** and **Ethridge, JJ.,** concur.