**Frank E. THORNTON, Plaintiff,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION and Motors Insurance Corporation, Defendants.**

**No. EC 80–27–OS–P.**

United States District Court,
N. D. Mississippi, E. D.

March 6, 1981.

Roy O. Parker, Parker, Averill & Butts, Tupelo, Miss., for plaintiff.

Dennis W. Voge, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, Senior District Judge.

The parties have submitted to the court, cross-motions for summary judgment based upon the pleadings, depositions, and affidavits appearing in the file. The court has also received and considered the memoranda of authorities and briefs of the parties.

The court finds, after a consideration of the issues presented, that the motion of defendants General Motors Acceptance Corporation (hereinafter referred to as "GMAC") and Motors Insurance Corporation (hereinafter referred to as "MIC") is well taken and should be sustained and the motion by plaintiff Frank E. Thornton (hereinafter referred to as "Thornton") is not well taken and should be denied.

The facts material to the issues are reflected by the depositions and affidavits on file and are undisputed in any material way.

The depositions and affidavits reflect that Thornton purchased a 1976 Chevrolet Monte Carlo automobile from Epperson Chev-Olds, Inc., a retail automobile dealer in Amory, Mississippi. Thornton executed a retail installment contract covering the purchase price of the automobile on July 17, 1976. GMAC thereafter purchased the contract from the dealer. The contract reflects that Thornton would procure physical damage insurance on the automobile from Allstate Insurance Company, but, this he was unable to do. On July 27, 1976, Thornton requested GMAC to procure the insurance from MIC and add the premium, the sum of $136.00, to his contract. To the $136.00 was added a carrying charge of $25.75. This resulted in $161.75 being added to the contract and increasing the monthly installment payment from $152.52 to $156.46. This was accomplished on August 6, 1976.

At the expiration of the first year's insurance coverage, Thornton purchased an additional one-year coverage from MIC for an effective period from July 27, 1977 through July 27, 1978. The premium on the insurance amounting to $206.00, plus the finance charge therefor, $26.75, amounted to $232.75. This sum was added to Thornton's contract held by GMAC. There was an increase in the monthly payment to $164.84.

At the expiration of two years insurance coverage, Thornton purchased a policy from MIC covering the period July 27, 1978 through July 27, 1979. The policy, No. 226F0815–1, was issued to Thornton and an insurance premium of $185.00 was charged therefor. Thornton financed this insurance premium together with the finance charge of $17.42, or a total of $202.42, through GMAC and this amount was added to Thornton's contract, resulting in an increase of monthly payment on the contract to $174.11.

Coverage was afforded under Policy No. 226F0815–1 (from July 27, 1978 through July 27, 1979). MIC cancelled this policy, however, pursuant to policy provision, on March 14, 1979. The policy expired by its own terms on July 27, 1979.

Upon the cancellation of Policy No. 226F0815–1 by MIC on March 19, 1979, MIC paid to GMAC the unearned premium amounting to $68.42. GMAC advanced Thornton, under the retail installment contract, the sum of $20.58, which was added to the refund of $68.42, and the aggregate sum used to purchase from MIC a single interest policy to secure the interest of GMAC in the Thornton automobile.

The action of GMAC in advancing the funds to secure dual insurance for its protection and that of Thornton, as well as securing single insurance coverage for its own protection upon cancellation of the dual coverage was fully authorized by the terms of the retail installment contract executed by Thornton.

Thornton's automobile, which was financed by GMAC under the above-mentioned retail installment contract, was wrecked by him and damaged in the sum of $2,642.21 on August 22, 1979.

Thornton alleges that the aforesaid policy was in full force and effect as of the date of the wreck. Although the undisputed facts reflect that on the date of the accident, i. e., August 22, 1979, Policy No. 226F0815–1, was not in force or effect, Thornton contends that the monthly payments which he continued to make after the cancellation of the policy included payments for insurance coverage, and that GMAC and MIC are estopped to deny liability for the loss.

█ It is settled law in Mississippi that where an insurance contract is plain and unambiguous it shall be construed as written, like any other contract. *Griffin v. Maryland Casualty Company*, 213 Miss. 624, 57 So.2d 486, 489 (1952).

█ Notwithstanding the conclusive showing that Policy No. 226F0815–1 was cancelled March 19, 1979, and expired by its own terms July 27, 1979, Thornton contends that defendants nevertheless are liable to him for the damages to the automobile which resulted from the wreck on August 22, 1979. Thornton proceeds on the theory that defendants continued to accept the insurance payments after the cancellation of the policy on March 19, 1979, and are now estopped from denying the coverage. Among others to support his position,

Thornton cites a Mississippi case, *Soso Trucking, Inc. v. Central Insurance Agency, Inc.*, 236 So.2d 398, 407 (Miss.1970), where the court said "[a]n insurance company cannot insist upon collecting premiums on an insurance policy and, at the same time, successfully contend that the insurance policy had been cancelled for nonpayment of premiums." This case and the others cited by Thornton are not applicable here. The monthly payments which Thornton continued to make, after the cancellation of Policy No. 226F0815–1 on March 19, 1979, included repayment of premiums advanced pursuant to the retail installment contract for his account by GMAC. These advances by GMAC did not include any premium on the policy in question which extended its coverage beyond the cancellation date. The amount advanced by GMAC to procure the single interest coverage for its own protection was authorized by the retail installment contract and created an obligation on the part of Thornton. There is no merit to Thornton's position.

In summary, the court finds that defendants' motion for summary judgment should be sustained, and plaintiff's motion overruled.

The court will enter the appropriate order and judgment.