737 So.2d 366 (1998)
INFINITY INSURANCE COMPANY, Appellant,
v.
Rashmikant PATEL, Appellee.
No. 97-CA-00671 COA.
Court of Appeals of Mississippi.
October 13, 1998.
Rehearing Denied March 9, 1999.
Walter C. Morrison, IV, Jackson, for Appellant.
Charles E. Smith, Meridian, Jeremy B. Chalmers, Philadelphia, for Appellee.
BEFORE THOMAS, P.J., and KING and SOUTHWICK, JJ.
SOUTHWICK, Judge, for the Court:
¶ 1. An insurance company sought a declaratory judgment that coverage was never in effect since the check for the initial payment on a policy was dishonored by the *367 applicant's bank. The trial court focused on language in the insurance application that voided coverage when a check was returned for non-sufficient funds. The court found that this wording did not apply unambiguously to the present situation in which the check was returned because the account had been closed. Accordingly, insurance was in effect. Since we find that there were still disputes of material fact and that summary judgment was improper, we reverse and remand.

FACTS
¶ 2. The underlying facts are uncontested. On February 21, 1995, Rashmikant Patel applied for insurance with Infinity Insurance Company to be effective beginning February 26, 1995. The initial premium was paid by Patel's check dated February 21, 1995. The check was not honored upon presentation to the Citizens National Bank on March 3 since the account on which it had been drawn was closed by Patel that same day. At approximately 2:20 p.m., also on March 3, Patel's wife was involved in an automobile accident. Patel filed a claim with his insurance agent on March 9. Infinity sent Mr. Patel a notice of recission on March 17 and refused his claim.
¶ 3. Infinity filed for declaratory relief on October 20, 1995. It sought a determination that there was no coverage because Patel's check was dishonored. The relevant provision in the insurance application states "that if my down payment or full payment check is returned by the bank because of non-sufficient funds, coverage will be null and void from inception." Cross motions for summary judgment were filed. The court granted Patel's motion, finding the contract to be in effect.

DISCUSSION
¶ 4. This is an appeal from a summary judgment. Motions for such judgments usefully focus the parties and the court on whether there are disputes of relevant fact that need to be tried, or only disputes of relevant law for which there need be no trial. M.R.C.P. 56. Our review reconsiders the facts without any deference to the trial court's fact-findings and applies our own interpretation of the law. Daniels v. GNB Inc., 629 So.2d 595, 599 (Miss.1993). Mississippi's experience is that granting such motions is more favored by trial courts than affirming such judgments is favored by appellate courts. Be that as it may, our review considers the motion anew.
¶ 5. Infinity initially argues that there never was a contract since consideration was never received. Under basic contract rules, there must be an offer and acceptance, Anderton v. Business Aircraft, Inc., 650 So.2d 473, 476 (Miss.1995) and consideration. McGee v. Clark, 343 So.2d 486, 489 (Miss.1977). The only documentation at the time of the accident was the application. By its terms no policy was to be issued until payment was made. The application would become a part of the policy once issued, and the policy itself would be effective as of the date shown, which was February 26, 1995. However, if the check used for payment were returned because of "non-sufficient funds," the application provided that coverage would not exist.
¶ 6. Infinity's point that a contract requires consideration is unassailable. Yet the point also begs the questions that we facewhat consideration was required and when must it be paid? Many years ago the supreme court held that for an insurance contract to exist "the minds of the parties must meet as to the terms of the contract. It is not essential that the premiums on the policies be paid, or that the policies be actually delivered to the insured, before the contract becomes effective." Scottish Union & National Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 754-755, 80 So. 9 (1918). This was reiterated in Canal Insurance Co. v. Bush, 247 Miss. 87, 105, 154 So.2d 111, 119 (Miss. 1963). That language can be read in various ways, some readings perhaps being *368 over-broad. For present purposes we are only concerned with whether the parties agreed that any failure of the initial check to be honored terminated Patel's opportunity to correct that problem. If they did not so agree, then general contract principles do not require automatic termination.
¶ 7. The application speaks to there being no coverage ab initio only when the check used for consideration is returned for one specific reasonnon-sufficient funds. The check might be returned because the drawer forgot to sign it. Cash might have been used and neither the applicant nor the agent knew that one of the bills was counterfeit. Contracting parties can agree that certain delays in receiving consideration will be treated as terminating the potential contract, while others will not. Insurance companies are businesses and as such have reasons to write agreements that balance hard-nosed business practices and flexibility with customers. Should the business decision have been that all delays in payment would cancel the contract and a new agreement would then have to be reached, language to that effect could have been used. Such an approach, though beneficial to insurance companies in the unusual circumstances of a case such as this, would frequently be undesirably cumbersome. It would also cost the company money, since it would not be entitled to any premium for the period of the coverage that was canceled, while otherwise a corrected payment would reinstate the coverage and the premium obligation from the original starting date.[1]
¶ 8. We must decide whether the lower court was correct when it concluded that what occurred here was a dishonoring for a reason other than the one detailed in the application. If it was, then Patel's opportunity to correct the mistake would not be affected by the "null and void" language in the application.
¶ 9. Infinity argued that whether the check was dishonored due to insufficient funds in an open account or due to the account having been closed, the result was the same: funds were not available to honor the check upon its presentment. Conversely, Patel argued that "non-sufficient funds" meant an open account without adequate funds and not a closed account. Regardless, whether the term referred to both situations was ambiguous. Both parties presented motions for summary judgment. The only evidence was the insurance application and rescission documents, and a letter from an official at Patel's bank explaining the closing of the account. The court granted summary judgment for Patel on the basis that the contract's terms were ambiguous and should be interpreted against the drafter. The trial court found that the term "non-sufficient funds" "implies that funds are credited to the account, but they are not sufficient to cover the monetary amount indicated on the check."
¶ 10. In reviewing the correctness of that decision, we note that neither Patel here nor the court below cite any authority that limits the phrase in this way. We find no definition under Mississippi law nor under federal banking statutes and regulations of the phrase "non-sufficient funds." No affidavits or other evidence were introduced to show a basis for the implication relied upon by the court. The ambiguity that the court found might have rested on that court's view of common usage. We agree that the initial factual situation conjured up by the use of the phrase may well be of an open but dissipated account. However, the possibility that this is the more frequent usage does not necessarily mean the phrase is ambiguous insofar as applying to other situations in which the bank did not have funds in *369 the account that the depositor wished to draw upon.
¶ 11. In other contexts that phrase has a broad meaning. For example, the bad check criminal statute has as an element that the check-writer "has not sufficient funds in or on deposit with such bank...." Miss.Code Ann. § 97-19-55 (Rev.1994). That is the equivalent of the "non-sufficient funds" phrase in this insurance application. The criminal statute also has intent and knowledge requirements. Id. The statute applies to checks written on accounts that have been closed or never existed, and ones that were open. That is evident from a section of the relevant statutes that provides a simpler procedure for proving the offense when the reason that there were "not sufficient funds" is that the maker "did not have an account" with the bank. Miss.Code Ann. § 97-19-61 (Rev.1994).
¶ 12. What a term means in one context is no proof of what it means in another. "Non-sufficient funds" literally means that there were not funds sufficient in amount. There is nothing in the words themselves that would cause a distinction between inadequacy because an account, though open, contained too little money, and inadequacy because an account, since it was closed, contained no money at all. The standard analytical process for contract interpretation is that only if the meaning of a term is ambiguous will resort to extraneous evidence be permitted. Delta Pride Catfish, Inc. v. Home Insurance Co., 697 So.2d 400, 403-404 (Miss.1997). However, such a statement can obscure more than it reveals. "[S]ome of the surrounding circumstances always must be known before the meaning of the words can be plain and clear...." 3 CORBIN ON CONTRACTS § 542, at 100-102 (1960). As another authority phrased it:
Although a particular word or phrase, when tested by a general or normal standard, may seem clear and plain, restoration of the factual environment at the time and place of the making of the agreement, may ... give it an entirely different meaning. Not only technical terms and words of art may carry special significance, but expressions in everyday use may be varied by context [or] circumstances.
4 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 609, at 402 (3d ed.1961). See also Hicks v. Bridges, 580 So.2d 743, 746 (Miss.1991). Therefore, "plain English" from a dictionary may not always be the correct English in contract interpretation.
¶ 13. The specific part of the agreement at issue here concerned the possible action by a bank in returning a check. A determination of the normal usage of the relevant phrase must address what banking or for that matter insurance practices consider the meaning of non-sufficient funds. The "factual environment" or setting for the words, as stated by Williston, is in banking. One of the accepted rules of interpretation is that "technical terms and words of art are given their technical meaning when used in a transaction within their technical field." RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(b) (1981). We have nothing definitive but do have some evidence of what this bank considered "non-sufficient funds." On March 17, two weeks after the simultaneous events of the closing of the account, the accident, and the dishonoring of the check on March 3, Infinity sent the following "Notice of Recission:"
Your check dated 2/21/95 for $220.98 has been returned by your bank marked:
 N.S.F. or
 x O .
Thus the place for marking that the check was returned for "N.S.F." was left blank, and the block for noting other reasons had an "x" placed in it. The alternative reason was not stated, but it appears that Infinity accepted in this notice a conclusion by the bank that the check was not returned for the one reason that allowed the coverage to be canceled ab initio. The notice of recission stated that the bank took the *370 position that it was not returning the check for reasons of non-sufficient funds. Infinity then implicitly adopted that conclusion in its notice. The check itself was stamped "account closed." Whether that means something distinct from "non-sufficient funds" is a different matter.
¶ 14. Since we have focused on the notice of recission, it would be useful also to indicate what we are not holding by this analysis. The important evidence that we find missing in the record on summary judgment relates to the significance of the term "non-sufficient funds" in banking. If such evidence tends to show that the term applies to a closed account, while the notice of recission suggests it does not, the notice of recission does not automatically control. Since evidence from outside a contract can be used to define a term only if it is ambiguous, Griffin v. Maryland Casualty Co., 213 Miss. 624, 631, 57 So.2d 486 (1952), the notice of recission itself cannot alter the meaning of a phrase with an accepted technical meaning. Put another way, the notice of recission becomes useful if "the parties have, by certain acts of their own, placed a construction upon doubtful terms of a contract of insurance, this construction generally will be adopted by the courts as against them." 2 COUCH ON INSURANCE, § 15:53, at 291-92 (1984). When "language used in a policy is of doubtful meaning, and the issuing company has construed the same, such construction must be considered as very persuasive, especially, if it is favorable to the insured." Id. at 292-93. If the accepted interpretation of "non-sufficient funds" would cover open accounts with too little money and also closed accounts with none, the notice of recission sent by Infinity is irrelevant. A post-agreement act of the party cannot itself make a contract phrase ambiguous.
¶ 15. Based on this record, the trial court erred in finding that there was no dispute as to material facts regarding the meaning of the operative phrase. There is little evidence of the contextual meaning of this term. What there is comes from the notice of recission, but we find that too indirect and insubstantial to permit a ruling on summary judgment. In effect, the court interpreted the phrase without anchoring it to much more than the court's own conception of what "non-sufficient funds" meant. The court's interpretation is reasonable, but it is not necessarily accurate.
¶ 16. We remand for the parties further to address the legal and factual issues raised by the suit. Nothing here is intended to suggest this court's view of the proper interpretation of the phrase other than that the evidence presented and the authorities cited are too inconclusive for summary judgment.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS REVERSED AND REMANDED FOR ADDITIONAL PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS ARE ASSESSED TO THE APPELLEE.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
DIAZ, J., dissents with separate written opinion.
DIAZ, Judge, dissenting:
¶ 18. I respectfully dissent from the majority opinion. Summary judgment should be granted only if "there are no genuine issues as to any material fact." M.R.C.P 56(c). When reviewing a decision to grant summary judgment, this Court will review the case de novo. Crain v. Cleveland Lodge 1532, 641 So.2d 1186, 1188 (Miss. 1994). All evidentiary matters are viewed in a light most favorable to the non-movant. Id. (emphasis added); Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss. 1993). Mr. Patel, by his cross motion for summary judgment, must show that there *371 is no issue of fact concerning the limited language of the contract. I believe that Mr. Patel has met this burden.
¶ 19. Infinity Insurance argues that according to the policy terms, a Notice of Recission was in order, and relies on the following policy language which was agreed to by Mr. Patel:
I further agree that if my down payment or full payment check is returned by the bank because of non-sufficient funds, coverage will be null and void from inception.
¶ 20. The law in Mississippi regarding the interpretation of contract provisions, such as this one, is that language which is clear and unambiguous must be construed as written. Ford v. Lamar Life Ins. Co., 513 So.2d 880, 886 (Miss.1987). Furthermore, if ambiguity exists in contracts, such as the insurance policy in this case, they must be strictly construed against the drafter/insurer and in favor of the insured finding a coverage. Johnson v. Preferred Risk Auto. Ins. Co., 659 So.2d 866, 871 (Miss.1995).
¶ 21. We find that if the foregoing provision is strictly construed, then it should be applied only to checks which are returned "because of non-sufficient funds." The terms of this policy would not include checks returned for other reasons, such as a closed account, unauthorized signatory, or stop payment order. Infinity Insurance selected the contract language "because of non-sufficient funds." In this case, the check was returned stamped "account closed." The term non-sufficient funds implies that although funds are credited to an account, they are not sufficient to cover the monetary amount indicated on the check. Infinity Insurance, as the drafter, could have inserted contract language that invalidated the coverage ab initio when a check was dishonored or not paid for any reason. Accordingly, I find no genuine issue of material fact that the contract language encompasses more than the express language; and therefore, pursuant to Rule 56, M.R.C.P. summary judgment should be granted to the Mr. Patel.
NOTES
[1] Our conclusion that only the reasons for failure of consideration named in the application cause an automatic voiding of the agreement does not affect issues arising from fraud, which is a different analysis altogether but not relevant to this appeal.